NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2097-12T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DESHAUN P. WILSON,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

September 10, 2015

APPELLATE DIVISION

Submitted December 9, 2014 — Decided September 10, 2015

Before Judges Messano, Hayden and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 09-05-0454.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the brief).

John J. Hoffman, Acting Attorney General, attorney for respondent (Sara M. Quigley, Deputy Attorney General, of counsel and on the brief).

The opinion of this court was delivered by

MESSANO, P.J.A.D.

The Union County grand jury returned an indictment charging defendant DeShaun Wilson with third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1) (count one); third-degree possession of a controlled dangerous

substance with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3) (count two); and second-degree possession of a controlled dangerous substance with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (count three). Following an evidentiary hearing, the judge denied defendant's pre-trial motion to suppress evidence seized during a warrantless search. Defendant proceeded to trial before a different judge, but, a mistrial was declared when the jury was unable to reach a unanimous verdict.[1]

Before retrial, defendant moved for reconsideration of his motion to suppress, contending that certain testimony at trial contradicted testimony by the same witnesses at the pre-trial hearing. The judge denied that motion, defendant again proceeded to trial, and the jury convicted him of all counts. At sentencing, the judge merged counts one and two into count three and sentenced defendant to an eight-year term of imprisonment with a four-year period of parole ineligibility.

Defendant raises the following points on appeal:

---

[1] The record originally did not contain transcripts from this trial, nor did the parties directly discuss the first trial in their briefs. We ordered the transcripts since defendant has raised arguments that necessarily implicate testimony at the first trial.

POINT I

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY PROSECUTORIAL MISCONDUCT. (Not Raised Below)

POINT II

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1, PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED WHEN THE STATE'S LAY WITNESS RENDERED A HIGHLY PREJUDICIAL OPINION THAT SHOULD HAVE BEEN EXCLUDED.

POINT III

THE DEFENDANT'S RIGHT TO CONFRONTATION AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART I., PAR. 10 OF THE NEW JERSEY CONSTITUTION, AND THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 1 OF THE NEW JERSEY CONSTITUTION WERE VIOLATED.

A.   THE TRIAL COURT ERRONEOUSLY ADMITTED ACCUSATIONS AND OTHER EVIDENCE FROM ABSENTEE WITNESSES.

B.   THE TRIAL COURT ERRONEOUSLY ADMITTED HEARSAY PAPER EVIDENCE PREPARED BY THE GOVERNMENT TO PROVE AN ESSENTIAL ELEMENT OF THE CRIME.

POINT IV

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS

VIOLATED BY THE ERRONEOUS, CONTRADICTORY, AND PREJUDICIAL INSTRUCTION ON THE LAW OF CONSTRUCTIVE POSSESSION. (Not Raised Below)

POINT V

THE DEFENDANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 10 OF THE NEW JERSEY CONSTITUTION. (Not Raised Below)

POINT VI

THE DEFENDANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES, AS GUARANTEED BY ART. I, PAR. 7 OF THE NEW JERSEY CONSTITUTION, WAS VIOLATED.

POINT VII

THE DEFENDANT'S MOTION TO RECONSIDER THE DECISION TO DENY HIS MOTION TO SUPPRESS EVIDENCE SHOULD HAVE BEEN GRANTED.

POINT VIII

THE DEFENDANT'S SENTENCE IS EXCESSIVE.

A. THE TRIAL COURT IMPROPERLY BALANCED THE AGGRAVATING AND MITIGATING FACTORS.

B. THE TRIAL COURT ERRONEOUSLY MADE FINDINGS OF FACT THAT ELEVATED THE SENTENCE BEYOND THE MINIMUM TERM THAT COULD HAVE BEEN AND SHOULD HAVE BEEN IMPOSED BASED ON THE JURY'S FINDINGS. (Not Raised Below)

Having considered these arguments in light of the record and applicable legal standards, we affirm.

A-2097-12T4

In Points VI and VII, defendant contends that the first judge erred in denying his motion to suppress, and the trial judge erred in denying his motion for reconsideration. At the pre-trial hearing on the motion to suppress, the State called Elizabeth police officer James Szpond as its sole witness. On January 30, 2009, he and officer Louis Garcia received information from a citizen regarding possible narcotics sales at a certain address in a "[h]igh narcotic trafficking" neighborhood. The information also provided a "unique" detailed description of a suspect and the clothing he wore. While conducting surveillance from an undisclosed location, the officers observed a man who fit the description, later identified as defendant, standing outside a bodega. Szpond testified that the officers also had a clear view of defendant's "stash spot."

Szpond saw two men approach defendant and engage in a brief conversation, after which defendant walked a short distance away and down the alley of a nearby residential building. Szpond saw defendant bend down, return toward the street and motion to the men. Defendant received money and gave the men a small object. Fifteen minutes later, defendant was approached by a female, and Szpond observed similar activity. Other officers were called to

the scene and arrested defendant. Szpond proceeded to the alley, walked to the area where he had seen defendant bend down, and found a plastic bag containing vials of cocaine hidden in a drainpipe.[2]

Defendant called Garcia as a witness. His testimony was largely consistent with Szpond's. Garcia acknowledged that the alley was part of a private home, albeit not defendant's, and that the officers did not secure a search warrant prior to seizing the narcotics.

The judge placed his oral decision on the record. He found both officers credible and, based upon the anonymous tip they received and observations they made, the judge concluded there was probable cause to arrest defendant. The judge held that defendant lacked any possessory interest in the drainpipe, and he "could not have had a subjective expectation of privacy as he could not expect that the zip-loc bag and its contents would be safe from detection in this area."

Before us, defendant argues that the warrantless search of the drainpipe and seizure of the drugs was not justified by any exception to the warrant requirement. The State contends that the judge properly determined that defendant had no reasonable

---

[2] During his trial testimony, Szpond claimed some drugs were in the drainpipe and some were not.

expectation of privacy in the drainpipe area of a stranger's home.

We think a case decided after the briefs were submitted in this appeal is fully dispositive of the issue. In State v. Brown, 216 N.J. 508, 535 (2014), the Court made clear that a defendant has "no standing to challenge a search if an officer had an objectively reasonable basis to believe [defendant] was a trespasser." It is apparently undisputed that defendant was a trespasser, in that he did not live at the premises and received no permission from the owner to repeatedly walk down the alley. Because the record is unclear as to whether the officers knew this beforehand, we assume arguendo that defendant had standing to bring the motion to suppress and consider whether the search and seizure without a warrant was justified.

"Even when a defendant has automatic standing, if . . . the merits rest on whether defendant possesses a reasonable expectation of privacy, the court must address that issue as part of the substantive constitutional analysis." State v. Hinton, 216 N.J. 211, 234 (2013). In this regard, our constitution "requires only that an expectation of privacy be reasonable." Id. at 236 (quoting State v. Hempele, 120 N.J. 182, 200 (1990)) (internal quotation marks omitted). However, our courts "have recognized circumstances in which no reasonable

expectation of privacy can be found, notwithstanding the residential setting of the police activity." Ibid. (citations omitted); see also State v. Gibson, 318 N.J. Super. 1, 10-11 (App. Div. 1999) (holding that the defendant's movements in a driveway "whether it was owned by him, his mother or any other person, was within the public view and observed from the public thoroughfare . . . . Accordingly, [he] could have no reasonable expectation of privacy in the driveway.").

The facts in this case are most similar to those presented in State v. Ford, 278 N.J. Super. 351 (App. Div. 1995). There, officers on surveillance observed the defendant walk down the side of a nearby house, kneel down, take something out of a hidden plastic bag, return the bag to a location on the outside of the house and complete a drug transaction with his cohort. Id. at 353. After arrests were made, an officer retrieved a bag containing cocaine from the side of the house. Id. at 353-54.

We held that the "defendants['] privacy rights in the contraband had already been forfeited." Id. at 357. We upheld the warrantless seizure, reasoning,

> Given the knowledge that a crime had been
> committed, given both officers' visual
> observations of the defendants during its
> commission, and given the observation of the
> contraband and its place of attempted
> concealment in an exterior portion of the
> house accessible by anyone from the outside
> without entering the house, no compelling

A-2097-12T4

> constitutional interests require suppression of the seized contraband from its known location.
>
> [Ibid. (citation omitted); see also State v. Jessup, ___ N.J. Super. ___, ___ (App. Div. 2015) (holding the defendant had no reasonable expectation of privacy regarding drugs left on top of the tire of a car).]

We believe the same rationale applies here. The judge properly denied defendant's motion to suppress.

Defendant next argues that the trial judge erred in denying his motion for reconsideration because the testimony of Szpond and Garcia at the first trial differed significantly from their testimony during the pre-trial suppression hearing. The trial judge stated "there was a discrepancy between what [they] said at trial, what they said in their police reports, and what they said . . . at the hearing." He concluded, however, that while this presented significant credibility issues for the jury, it did not affect whether the seizure of the drugs without a warrant was constitutional. He denied defendant's motion for reconsideration.[3]

---

[3] We have noted that motions for reconsideration are not expressly provided for by Part III of the Rules of Court governing practice in the criminal courts, but we have nevertheless applied the standards contained in Rule 4:49-2 to such applications. State v. Fitzsimmons, 286 N.J. Super. 141, 147 (App. Div. 1995), certif. granted, and remanded, 143 N.J. 482 (1996). Under that Court Rule, motions for reconsideration are addressed to "the sound discretion of the Court, to be

(continued)

The general rule that a "defendant cannot refer to evidence developed other than at the motion to suppress[] applies when [the] defendant challenges the denial of a motion to suppress." State v. Tavares, 364 N.J. Super. 496, 502 (App. Div. 2003). "The court's decision becomes the law of the case and is binding on whatever judge ultimately tries the case." State v. Jordan, 115 N.J. Super. 73, 76 (App. Div.), certif. denied, 59 N.J. 293 (1971); see also State v. K.P.S., 221 N.J. 266, 277-79 (2015) (holding that "law of the case" is not applicable to appeals filed by co-defendants).

Of course, there are exceptions to this general rule. "Presumably, if [a] defendant could show that the motion was denied because of fraud, or that the interest of justice required a new hearing on the merits (e.g., perjury), such would be permissible under the rules." Jordan, supra, 115 N.J. Super. at 76-77.

Any inconsistencies and discrepancies between the officers' testimony at the hearing and the first trial do not suggest fraud or perjury, nor do the interests of justice compel the

_____

(continued)
exercised in the interest of justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)) (internal quotation marks omitted).

A-2097-12T4

conclusion that the trial judge mistakenly exercised his discretion in denying defendant's motion for reconsideration.

## II.

At the second trial, the State called Szpond and Garcia as witnesses. Their testimony generally conformed with that referenced above, although they were subject to impeachment through inconsistencies in their reports and prior testimony. Utilizing an enlargement of a certified map, see N.J.S.A. 2C:35-7.1(e), Detective Brendan Sullivan of the Union County Prosecutor's Office testified that the location where the drug transactions occurred was within 500 feet of a public park. Detective Gary Webb testified as an expert in narcotics transactions. The State also called a masonry contractor who testified regarding work done on the house near the drainpipe. Defendant presented the testimony of Edward Fitzgerald, an investigator who visited and photographed the alleyway and the general area of the transactions. Fitzgerald's testimony impeached that of the officers regarding their ability to observe what defendant was doing at the end of the alley.

> [At the court's direction Subsections A, B, and C of Section II of its opinion, which concern discrete issues, have been redacted from the published opinion, because they do not meet the criteria set by R. 1:36-2(d) for publication. The published parts of the opinion continue as follows.]

III.

As previously mentioned, Detective Brendan Sullivan of the Union County Prosecutor's Office testified at trial. Sullivan identified an exhibit as "a standard 500-foot map," depicting an area within a five-hundred foot radius around Legget Park in Elizabeth. Sullivan identified the location where the drugs were found as being within the circle. Defense counsel vigorously cross-examined Sullivan, eliciting that the map was prepared by an engineer in 1998, and Sullivan could not verify the accuracy of its measurements or add much by way of description of the park itself.

Near the close of the State's case, the prosecutor sought to move the map, an affidavit authored by an assistant prosecutor who met with county engineers to prepare the map, and a resolution approved by the Union County Board of Chosen Freeholders accepting the map as official into evidence. Defense counsel objected, arguing that the State failed to lay an adequate foundation and the affidavit and resolutions were hearsay. The judge overruled defendant's objection and admitted the items into evidence.

Before us, defendant argues that the map was "testimonial" because it was "prepared for the purpose of prosecuting drug criminals," and its admission in evidence violated the

Confrontation Clause of the United States and New Jersey Constitutions. See U.S. Const. amend. VI; N.J. Const. art, I, ¶ 10) (recognizing a criminal defendant's right "to be confronted with the witnesses against him").[4] The State counters by arguing that, pursuant to N.J.S.A. 2C:35-7.1(e), the map was admissible as a business or government record, N.J.R.E. 803(c)(6); N.J.R.E. 803(c)(8), was properly authenticated pursuant to N.J.R.E. 902 and, for purposes of the Confrontation Clause, was not "testimonial."

### A.

N.J.S.A. 2C:35-7.1(a) provides:

> Any person who violates subsection a. of N.J.S.A. 2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled substance or controlled substance analog while in, on or within 500 feet of the real property comprising a public housing facility, a public park, or a public building is guilty of a crime of the second degree . . . .

---

[4] At trial, defense counsel never clearly articulated an argument under the Confrontation Clause, although he alluded to an inability to cross-examine the individual who had made the measurements. Since the trial in this case, our Court has held that a Confrontation Clause argument not advanced at trial may be deemed waived on appeal. See State v. Williams, 219 N.J. 89, 93 (2014) (holding that the "defendant's failure to object on confrontation grounds and his decision to cross-examine the [witness] constituted a waiver of his confrontation right"). However, whether admission of a drug-zone map violates the Confrontation Clause has been the subject of at least five unpublished opinions of our court, and therefore we conclude that the issue needs to be addressed in a published opinion.

13

The purpose of the statute, and N.J.S.A. 2C:35-7,

> is essentially the same: to protect those, predominantly children, in and around schools and public parks from exposure to the drug culture and perils of drug trafficking. In furtherance of that purpose, the Legislature mandated severe punishment for those who possess or distribute drugs in the safety zones established by those statutes.
>
> [State v. Lewis, 185 N.J. 363, 370 (2005).]

We have upheld the statute against a constitutional challenge alleging its disparate impact upon "minority and poor populations that make up a large percentage of the residents of public housing." State v. Brooks, 366 N.J. Super. 447, 457-58 (App. Div. 2004); see also State v. Ogar, 229 N.J. Super. 459, 471-72 (App. Div. 1989) (rejecting constitutional vagueness challenge to N.J.S.A. 2C:35-7).

N.J.S.A. 2C:35-7.1(e) provides in pertinent part:

> In a prosecution under this section, a map produced or reproduced by any municipal or county engineer for the purpose of depicting the location and boundaries of the area on or within 500 feet of a . . . public park, . . . or a true copy of such a map, shall, upon proper authentication, be admissible and shall constitute prima facie evidence of the location and boundaries of those areas, provided that the governing body of the municipality or county has adopted a resolution or ordinance approving the map as official finding and record of the location and boundaries of the area or areas on or within 500 feet of a public housing

> facility, a public park, or a public building . . . .
>
> [N.J.S.A. 2C:35-7.1(e); see also N.J.S.A. 2C:35-7(f) (containing similar provisions with respect to one thousand-feet school-zone maps.]

When an official map is admitted into evidence, the ordinance or resolution adopting the map should also be entered into evidence, as it was in this case. State v. Collins, 262 N.J. Super. 230, 240 (App. Div. 1993). Such maps are "self-authenticati[ng]" pursuant to N.J.R.E. 902, which provides, "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [a]ny . . . document . . . declared by state . . . law to be presumptively or prima facie genuine or authentic."

Statutes like N.J.S.A. 2C:35-7 and 2C:35-7.1 that impose enhanced penalties for acts committed within specified distances from schools, playgrounds, public parks, and other areas are common throughout the country, and generally the constitutionality of these statutes has been upheld. See Tracy A. Bateman, Annotation, Validity, Construction, and Application of State Statutes Prohibiting Sale or Possession of Controlled Substances Within Specified Distance of Schools, 27 A.L.R.5th 593 (1995); Jay M. Zitter, Annotation, Validity, Construction, and Application of State Statutes Enhancing Penalty for Sale or

Possession of Controlled Substances Within Specified Distance of Playgrounds, 23 A.L.R.6th 679 (2007); see also William G. Phelps, Validity and construction of 21 U.S.C.A. § 860 enhancing penalty for drug distribution if offense occurs within 1,000 feet of school, college, or university, 108 A.L.R. Fed. 783 (2008) (discussing enhanced penalties under federal law). However, statutory provisions that allow a governmental entity to generate and adopt an official map depicting the location and boundaries of the specified areas, and provide for the admission of that map as "prima facie evidence of the location and boundaries of those areas," are far less common.

Our research uncovered similar statutory provisions only in Texas, Tex. Health & Safety Code Ann § 481.135; Tex. Penal Code §§ 46.12, and 71.029, Georgia, Ga. Code Ann. § 16-13-32.6(e) and Washington, Wash. Rev. Code. § 69.50.435(5), and no reported case from those jurisdictions addresses whether admission of an official map, generated pursuant to these statutory provisions, violates a defendant's Sixth Amendment rights.

One case from Washington did address a related issue — whether the admission of an unofficial map violated the defendant's right to confrontation. See State v. Pearson, 321 P.3d 1285 (Wash. Ct. App.), review denied, 337 P.3d 327 (2014). In Pearson, the defendant was tried for selling drugs within

1000 feet of a school bus stop. Id. at 1286. Yakima County, where the offense occurred, had never adopted a "complying resolution or ordinance" adopting an official map under Wash. Rev Code. § 69.50.435. Id. at 1287-88. Instead, the county's director of Geographic Information Systems (GIS), which maintained "a digital legal map library for the county and all its departments," testified at trial. Id. at 1286. The witness explained that GIS would receive information supplied by the local school districts, including the location of bus stops. Id. at 1286-87. For the defendant's trial, GIS "created a map," using the location of the drug sale "as the center point and depicting a 1,000 foot radius around that center point," with the reported bus stop locations also depicted. Id. at 1287. The Pearson court noted that while Washington's statute specifically allowed for the use of an unofficial map that was "otherwise admissible," "the map [here] [wa]s not otherwise admissible." Id. at 1288. Citing Crawford v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 1364, 158 L. Ed. 2d 177, 192 (2004), and Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310-11, 129 S. Ct. 2527, 2531-32, 174 L. Ed. 2d 314, 321 (2009), the court held that the map fell "within the core class of testimonial statements," and that defendant "had a right to

confront the school district official" who provided information regarding the location of the school bus stops. Id. at 1288.

We do not consider Pearson to be particularly informative, since the holding focused on the hearsay nature of information given to the county director, who had no personal knowledge of the bus stop locations, and the defendant's inability to confront the source of that information. No reported decision in New Jersey has considered a Confrontation Clause challenge to the evidentiary provisions contained in either N.J.S.A. 2C:35-7(f) or N.J.S.A. 2C:35-7.1(e).

B.

We need not recount in great detail the sea change occasioned by the Supreme Court's decision in Crawford, prior to which hearsay statements were admitted without running afoul of the Confrontation Clause if they fell "under a firmly rooted hearsay exception or [bore] particularized guarantees of trustworthiness." 541 U.S. at 40, 124 S. Ct. at 1358, 158 L. Ed. 2d at 186 (quoting Ohio v. Roberts, 448 U.S. 56, 66, 100 S. Ct. 2531, 2539, 65 L. Ed. 2d 597, 608 (1980)). Instead, the Court in Crawford held, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Id. at 68-69, 124 S. Ct. at 1374,

18

158 L. Ed. 2d at 203 (emphasis added). Thus, admission of an out-of-court testimonial statement violates the Confrontation Clause unless the witness is unavailable and the defendant had an opportunity to cross-examine that witness. Id. at 68, S. Ct. at 1374, 158 L. Ed. 2d at 203. By contrast, "[w]here nontestimonial hearsay is at issue," the States have "flexibility in their development of hearsay law" and are not required to afford the defendant an opportunity for cross-examination. Ibid.

"[T]he question of whether a hearsay statement is testimonial or nontestimonial defies facile definition." State v. Buda, 195 N.J. 278, 300 (2008). Quoting Crawford, our Court has said that testimonial statements are those in which "witnesses bear testimony against the accused." State v. Cabbell, 207 N.J. 311, 329 (2011) (emphasis added) (quoting Crawford, supra, 541 U.S. at 51, 124 S. Ct. at 1364, 158 L. Ed. 2d at 192). In Davis v. Washington, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), while declining to "produce an exhaustive classification of all conceivable statements," the Court endeavored to provide greater clarity for determining whether a statement was "testimonial," adopting the "primary purpose" test:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is

to enable police assistance to meet an ongoing emergency. <u>They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution</u>.

[<u>Id.</u> at 822, 126 <u>S. Ct.</u> at 2273-74, 165 <u>L. Ed.</u> 2d at 237 (emphasis added).]

The Supreme Court has recently reiterated, "the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" <u>Ohio v. Clark</u>, ___ <u>U.S.</u> ___, ___, 135 <u>S. Ct.</u> 2173, 2180, 192 <u>L. Ed.</u> 2d 306, 315 (2015) (quoting <u>Michigan v. Bryant</u>, 562 <u>U.S.</u> 344, 358, 131 <u>S. Ct.</u> 1143, 1155, 179 <u>L. Ed.</u> 2d 93, 107 (2011)). "[A] statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial. 'Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause.'" <u>Ibid.</u> (quoting <u>Bryant</u>, <u>supra</u>, 562 <u>U.S.</u> at 359, 131 <u>S. Ct.</u> at 1155, 179 <u>L. Ed.</u> 2d at 107-08).

"Our state confrontation jurisprudence has followed the federal approach, focusing on whether a statement is testimonial[,]" <u>State v. Roach</u>, 219 <u>N.J.</u> 58, 74 (2014), <u>cert. denied</u>, ___ <u>U.S.</u> ___, 135 <u>S. Ct.</u> 2348, 192 <u>L. Ed.</u> 2d 148 (2015),

through application of the "primary purpose test." State v.
Michaels, 219 N.J. 1, 30-32, cert. denied, ___ U.S. ___, 135 S.
Ct. 761, 190 L. Ed. 2d 635 (2014). "In order to correctly apply
the Crawford analysis" a court "must consider first whether the
particular evidence is admissible under the ordinary rules of
evidence." State v. Chun, 194 N.J. 54, 139, cert. denied, 555
U.S. 825, 129 S. Ct. 158, 172 L. Ed. 2d 41 (2008). If so, the
next inquiry is "whether the particular evidence is
'testimonial' within the meaning of the Confrontation Clause,
for if it is, then the fact of admissibility for purposes of the
exceptions to the hearsay rules is insufficient" to warrant
admission absent cross-examination. Id. at 138-39; see also
State v. Sweet, 195 N.J. 357, 368 (2008).

Crawford, Davis and Clark involved verbal statements made
by a declarant to either law enforcement personnel or other
third parties where the declarant was not produced as a witness
at trial. Our Court has considered application of the
Confrontation Clause to similar scenarios, resulting in settled,
albeit fact-sensitive, precedent. See, e.g., State ex rel.
J.A., 195 N.J. 324, 328 (2008) (non-testifying witness's
statements to police were testimonial and their admission under
the circumstances violated the Confrontation Clause); Buda,
supra, 195 N.J. at 304, 308 (holding child's statements to his

mother and a DYFS worker were nontestimonial). However, the Confrontation Clause's application to statements contained in documentary evidence has stirred muddier waters.

Crawford seemingly made clear that most statements contained in documentary evidence admitted under well-recognized "hearsay exceptions . . . by their nature were not testimonial — for example, business records." 541 U.S. at 55, 124 S. Ct. at 1367, 158 L. Ed. 2d at 195. However, in a subsequent trilogy of cases involving forensic testing reports, that ratio decidendi has been obscured.

In Melendez-Diaz, supra, 557 U.S. at 311, 129 S. Ct. at 2532, 174 L. Ed. 2d at 321, a five-four decision, the Court concluded that certificates of analysis, "the sole purpose of [which] was to provide prima facie evidence of the composition, quality, and the net weight of the analyzed substance," were testimonial statements, and the defendant "was entitled to be confronted with the analysts at trial." (Internal quotation marks omitted). The Court went on to say:

> Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because — having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial. Whether or not they qualify as business or official records, the analysts' statements here —

22

> prepared specifically for use at petitioner's trial — were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.
>
> [_Id._ at 324, 129 _S. Ct._ at 2539-40, 174 _L. Ed._ 2d at 329-30 (emphasis added).]

Justice Kennedy wrote a vigorous dissent, declaring that _Crawford_ and _Davis_ only applied to "formal statements made by a conventional witness — <u>one who has personal knowledge of some aspect of the defendant's guilt</u>." _Id._ at 330, 129 _S. Ct._ at 2543, 174 _L. Ed._ 2d at 334 (Kennedy, J., dissenting) (emphasis added).

In <u>Bullcoming v. New Mexico</u>, ___ U.S. ___, ___, 131 _S. Ct._ 2705, 2709-10, 180 _L. Ed._ 2d 610, 616 (2011), a subsequent five-four decision, the Supreme Court concluded that the admission of a standard lab report regarding the defendant's blood alcohol level as a business record, in the absence of the preparer of the report as a witness, violated the Confrontation Clause. Although the state produced a witness who was generally familiar with laboratory procedures, testing and reports, the Court concluded that "the formalities attending the" report qualified the preparer's "assertions as testimonial." _Id._ at ___, 131 _S. Ct._ at 2717, 180 _L. Ed._ 2d at 624. Justice Kennedy, again writing for the dissent, argued that the Confrontation Clause did not "impose a constitutional bar on the admission of

impartial lab reports . . . prepared by experienced technicians . . . that follow professional norms and scientific protocols." Id. at ___, 131 S. Ct. at 2726, 180 L. Ed. 2d at 634 (Kennedy, J., dissenting).

Lastly, in Williams v. Illinois, ___ U.S. ___, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012), the majority of the Supreme Court concluded there was no Confrontation Clause violation when a testifying expert witness referenced a DNA report prepared by an outside laboratory, from which no witness was produced. In his plurality opinion, Justice Alito wrote that the report was not testimonial, in part, because it "was not prepared for the primary purpose of accusing a targeted individual." Williams, supra, ___ U.S. at ___, 132 S. Ct. at 2243, 183 L. Ed. 2d at 115.

Our Court found Williams to provide "at best unclear" precedential force, and specifically rejected the above-referenced aspect of Justice Alito's analysis, noting it diverged from "the primary purpose test that had been applied previously." Michaels, supra, 219 N.J. at 31. Both Michaels and Roach considered issues similar to those presented in Bullcoming and Williams.

In Michaels, supra, 219 N.J. at 5-6, the Court held the Sixth Amendment was not violated by admission at trial of a

certified lab report indicating defendant's blood sample tested positive for intoxicating substances, even though only the supervising analyst who had performed the test was the only witness at trial.  In Roach, supra, 219 N.J. at 60, the Court held the defendant's confrontation rights were not violated even though the testifying DNA analyst "did not perform the testing procedures that provided the basis for the DNA profile developed from the perpetrator's evidence," but only reviewed those tests and "matched" the defendant's DNA with that gathered from the crime scene.

Summing up the holdings in both cases, the Roach court explained that the confrontation rights of a defendant will not be violated if a supervisor, co-worker, or independent reviewer testifies "based on his or her independent review of raw data and conclusions . . . based on that data," provided the testimony is "provided by a truly independent and qualified reviewer of the underlying data and report" and not merely "parrot[ed]" by a surrogate witness.  Id. at 79.  Here, of course, no witness testified regarding preparation of the park-zone map or how its measurements were made.

Our Court has wrestled with Confrontation Clause issues involving admission of purely documentary evidence both before and since Crawford was decided.  In State v. Simbara, 175 N.J.

37, 40 (2002), our Court considered the Confrontation Clause implications of N.J.S.A. 2C:35-19(b), which permits the admission in evidence of a laboratory certification, very much like the one at issue in Diaz-Melendez, without live testimony. The Court concluded that "[t]he State's proffer of a certificate whose form and content conform to the statute does not itself preclude a defendant's right to confront the certificate's preparer at trial." Id. at 48. The Court explained:

> A laboratory certificate in a drug case is not of the same ilk as other business records, such as an ordinary account ledger or office memorandum in a corporate-fraud case. Those latter documents have not been prepared specifically for the government's use in a potential criminal prosecution. In contrast, the analyst prepares the laboratory certificate at a prosecuting agency's request for the sole purpose of investigating an accused.
>
> [Id. at 49 (emphasis added).]

We have applied similar analysis to lab reports prepared by police chemists and blood test certificates issued under N.J.S.A. 2A:62A-11,[5] finding in both instances that the document

_____

[5] That statute provides:

> Any person taking a specimen pursuant to section 1 of this act shall, upon request, furnish to any law enforcement agency a certificate stating that the specimen was taken pursuant to section 1 of this act and in a medically acceptable manner. The
> (continued)

was "testimonial" and triggered rights under the Confrontation Clause. State v. Kent, 391 N.J. Super. 352, 354-55 (App. Div. 2007); State v. Renshaw, 390 N.J. Super. 456, 468-69 (App. Div. 2007).

In Chun, the Court considered Crawford's application to documentary evidence — the Alcotest's "foundational documents," relating to the good working order of the device, Chun, supra, 194 N.J. at 142, and the "Alcohol Influence Report" or AIR, that "reports the results of a test which, in and of itself under our statute, suffices to support a conviction." Id. at 145. As to the foundational documents, the Court said they were "business records in the traditional sense." Id. at 142. Their admission did not violate the Confrontation Clause because, although some were "prepared by the police, . . . none of them relate[d] to or report[ed] a past fact and none of them [was] generated or prepared in order to establish any fact that is an element of the offense." Id. at 144 (citing Davis, supra, 547 U.S. at 821-24, 126 S. Ct. at 2273-74, 165 L. Ed. 2d at 237). The

(continued)

> certificate shall be signed under oath before a notary public or other person empowered to take oaths and shall be admissible in any proceeding as evidence of the statements contained therein.
>
> [N.J.S.A. 2A:62A-11.]

foundational documents were not "testimonial in the constitutional sense." Ibid.; see also Sweet, supra, 195 N.J. at 373-74 (reaching same conclusion regarding breathalyzer foundational documents).

The Chun Court also determined that the AIR was not testimonial, reasoning:

> First, the AIR reports a present, and not a past, piece of information or data. Second, although given in the presence of a police officer who operates the device, nothing that the operator does can influence the machine's evaluation of the information or its report of the data. Third, although the officer may have a purpose of establishing evidence of a BAC in excess of the permissible limit, the machine has no such intent and may as likely generate a result that exonerates the test subject as convicts him or her.
>
> [Chun, supra, 194 N.J. at 147.]

Nevertheless, the Court also "concluded that [with respect to the AIR] defendants are entitled to certain safeguards that we have required be implemented in prosecutions based on the Alcotest[,] . . . through our requirement that the operator of the device be made available to testify." Id. at 148.

We turn to the map at issue in this case, a piece of documentary evidence not readily amenable to Confrontation Clause analysis.

It is beyond peradventure, and defendant does not contend otherwise, that the map "is admissible under the ordinary rules of evidence." Id. at 139; see N.J.R.E. 803(c)(8).[6] We acknowledge defendant's essential argument, however, that the map is "testimonial" because its primary, and perhaps only, purpose is to establish a fact that the State must prove as an element of the crime charged, i.e., in this case, that a particular location is within five-hundred feet of Legget Park. In this sense, the map is "an out-of-court substitute for trial testimony." Bryant, supra, 562 U.S. 344, 358, 131 S. Ct. 1143, 1155, 179 L. Ed. 2d 93, 107.

---

[6] The rule excepts from exclusion under the hearsay rule:

> (A) a statement contained in a writing made by a public official of an act done by the official or an act, condition, or event observed by the official if it was within the scope of the official's duty either to perform the act reported or to observe the act, condition, or event reported and to make the written statement, or (B) statistical findings of a public official based upon a report of or an investigation of acts, conditions, or events, if it was within the scope of the official's duty to make such statistical findings, unless the sources of information or other circumstances indicate that such statistical findings are not trustworthy.
>
> [N.J.R.E. 803(c)(8).]

However, like the foundational documents found not to be testimonial in <u>Chun</u>, the map is wholly objective, having been prepared by an independent firm, under the direction of the county engineer, and adopted by the freeholders as "properly depict[ing] the location and boundaries of the area on or within 500 feet of a public housing facility or a public park or a public building . . . within Union County."

We acknowledge that Confrontation Clause analysis cannot turn on whether a defendant is able to introduce evidence to "challenge or verify" the testimonial statement. <u>Melendez-Diaz</u>, <u>supra</u>, 557 <u>U.S.</u> at 318, 129 <u>S. Ct.</u> 2527, 2536, 174 <u>L. Ed.</u> 2d 314, 326. However, unlike out-of-court verbal statements made by unavailable witnesses, or laboratory analysis conducted in the past and perhaps unable to be replicated at the time of trial, defendant is peculiarly capable of refuting the State's proof regarding the map, because defendant may conduct his own measurements and introduce them at trial.

Additionally, and we believe more importantly, the map was produced and adopted once in the past, without regard to <u>this</u>, or any other, particular defendant's trial. A common thread throughout the cases cited is that the documentary testimonial statement at issue was prepared specifically to be introduced at the defendant's future prosecution. <u>Compare</u> <u>Williams</u>, <u>supra</u>,

___ U.S. at ___, 132 S. Ct. at 2243, 183 L. Ed. 2d at 115 (DNA lab report prepared by non-testifying lab technician "was not prepared for the primary purpose of accusing a targeted individual"), with Melendez-Diaz, supra, 557 U.S. at 324, 129 S. Ct. at 2540, 174 L. Ed. 2d at 329-30 (lab certificate "prepared specifically for use at petitioner's trial" was "testimony against petitioner . . . subject to confrontation under the Sixth Amendment"); see also Crawford, supra, 541 U.S. at 51, 124 S. Ct. at 1364, 158 L. Ed. 2d at 192) (Confrontation Clause barred formal statement taken by police of non-testifying "witness[] against the accused" (internal quotation marks omitted)); and compare Simbara, supra, 175 N.J. at 49 ("[T]he analyst prepares the laboratory certificate at a prosecuting agency's request for the sole purpose of investigating an accused.") (emphasis added), with State v. Dorman, 393 N.J. Super. 28, 33 (App. Div. 2007), aff'd sub nom., Sweet, supra, 195 N.J. at 357 (2008), cert. denied, 557 U.S. 934, 129 S. Ct. 2858, 174 L. Ed. 2d 601 (2009) (noting that Breathalyzer "certificates of operability . . . were not created with any specific case in mind").

The map in this case was not prepared to prosecute this defendant, although it likely served no purpose except to be evidence at the prosecution of a defendant. In this regard, we

find it closely analogous to the foundational documents in <u>Chun</u>, which the Court concluded were not "testimonial in the constitutional sense" even if they proved reliability of a device "used to conduct the breath test for a particular defendant." <u>Chun</u>, <u>supra</u>, 194 <u>N.J.</u> at 144. A number of out-of-state cases have similarly concluded that the admission of documentary hearsay evidence not generated in relation to a specific defendant did not violate the Confrontation Clause. <u>See, e.g.</u>, <u>State v. Fischer</u>, 726 <u>N.W.</u>2d 176, 183 (Neb. 2007) (holding a simulator solution certificate that "was prepared in a routine manner without regard to whether the certification related to any particular defendant" non-testimonial); <u>State v. Dial</u>, 998 <u>N.E.</u>2d 821, 825-26 (Ohio Ct. App. 2013) (distinguishing cases involving a defendant's "individual blood-test results" from documents related to machine calibration, which are "not prepared with an eye to prosecute a specific defendant"); <u>Jarrell v. State</u>, 852 <u>N.E.</u>2d 1022, 1026-27 (Ind. Ct. App. 2006) (holding breath-test-machine certifications nontestimonial because "not prepared in anticipation of litigation in any particular case or with respect to implicating any specific defendant").

We find these cases, together with the Court's reasoning in <u>Chun</u>, to be particularly persuasive in this instance. The park-

zone map, although hearsay, was not testimonial in nature, and therefore did not violate the Confrontation Clause. Additionally, it was admitted in a manner that complied with our Evidence Rules and N.J.S.A. 2C:35-7.1(e).

> [At the court's direction, Section IV of its opinion, which concerns discrete issues, has been redacted from the published opinion because the issues do not meet the criteria set by R. 1:36-2(d) for publication.]

The judge did not abuse the broad discretion accorded to him in imposing sentence upon defendant, and we therefore affirm defendant's sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION