SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. DeShaun P. Wilson** (A-42-15) (076609)

**Argued October 11, 2016 -- Decided January 19, 2017**

**Solomon, J., writing for a unanimous Court.**

In this appeal, the Court determines whether the admission into evidence of a map, prepared and adopted by a governmental entity pursuant to N.J.S.A. 2C:35-7.1(e), violates the Confrontation Clause of the Sixth Amendment to the United States Constitution and the analogous New Jersey constitutional provision, which guarantee an accused "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10.

Police detectives observed defendant DeShaun P. Wilson engage in the apparent sale of "crack cocaine" in the area of a public park in Elizabeth. Wilson was charged with third-degree possession of a controlled dangerous substance (CDS), third-degree possession of CDS with intent to distribute, and second-degree possession of CDS with intent to distribute in or within 500 feet of a public park.

During trial, the State sought to admit into evidence three related documents: a map of the park with a legend noting that the map was certified in 1998 by "Armand A. Fiorletti, P.E., Union County Engineer"; an affidavit by an assistant Union County prosecutor, Richard Rodbart, stating that he had personally worked with the Engineer in contracting a third party to produce maps depicting each 500-foot zone within the county; and Resolution No. 1513-99, passed by the Union County Board of Chosen Freeholders, which states that the purpose of depicting the 500-foot areas was to "introduce[e] said map[s] as evidence of the locations and boundaries of those areas within Union County in criminal prosecutions under N.J.S.A. 2C:35-7.1."

Wilson objected to the admission of the three documents, arguing that the map had not been properly authenticated and that the affidavit was inadmissible hearsay. Wilson emphasized that he never had an opportunity to cross-examine Rodbart. The trial court disagreed and admitted the documents into evidence. The jury was unable to reach a unanimous verdict, and the court declared a mistrial.

During the second trial, the State called a detective from the prosecutor's office as a witness. The detective testified that the map was "a standard 500-foot map" but admitted that he did not create the map or take the measurements that establish the area it depicts and that he relied on the engineer's work for accuracy. When the State moved to enter the map and other documents into evidence, defense counsel objected that the map was inadmissible. The trial court admitted all three documents into evidence. Wilson was convicted of all charges.

The Appellate Division affirmed the conviction, holding that the map was nontestimonial and that its admission did not violate Wilson's confrontation rights. 442 N.J. Super. 224, 248 (App. Div. 2015). The panel found the map admissible under New Jersey's Rules of Evidence and N.J.S.A. 2C:35-7.1(e).

The Court granted Wilson's petition for certification "limited to the issue of whether defendant's confrontation rights were violated by the admission into evidence of a map to establish the crime of distribution of CDS within 500 feet of a public park." 224 N.J. 119 (2016).

**HELD**: The map commissioned and adopted by the Board pursuant to N.J.S.A. 2C:35-7.1(e) is nontestimonial and its admission therefore did not violate Wilson's confrontation rights. Further, such maps are admissible, if properly authenticated, under N.J.S.A. 2C:35-7.1(e) and as public records pursuant to N.J.R.E. 803(c)(8). Because the map was not properly authenticated, however, the Court is constrained to reverse the Appellate Division's judgment that the map was properly admitted into evidence at trial and to remand the matter for a new trial on the count of defendant's conviction that depended on the map.

1. Wilson's Confrontation Clause objection was timely and adequate. The Confrontation Clause affords a procedural guarantee that the reliability of evidence will be tested "in a particular manner" through "the crucible of cross-examination." Crawford v. Washington, 541 U.S. 36, 61, 124 S. Ct. 1354, 1370, 158 L. Ed. 2d 177, 199 (2004). Under the standard set forth in Crawford, a testimonial statement against a defendant by a non-testifying witness is inadmissible under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him or her. (pp. 9-12)

2. The Court reviews United States Supreme Court jurisprudence and its development of the "primary purpose" test to determine whether an out-of-court statement is testimonial and, accordingly, falls within the ambit of the Confrontation Clause. In Davis v. Washington, the Court noted that statements with the primary purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution" would be testimonial. 547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74, 165 L. Ed. 2d 224, 237 (2006). (pp. 13-15)

3. This Court has applied the primary purpose test in various Confrontation Clause cases involving the admission of forensic reports and medical examiner testimony. In State v. Michaels, 219 N.J. 1, 44, cert. denied, ___ U.S. ___, 135 S. Ct. 761, 190 L. Ed. 2d 635 (2014), the Court held that a blood test report prepared after a fatal motor vehicle accident was testimonial because its primary purpose was to serve as "a direct accusation against [the] defendant." In State v. Bass, 224 N.J. 285, 316-17 (2016), the Court found an autopsy report to be testimonial because the autopsy was conducted after a homicide investigation had begun; the defendant was a suspect in the homicide and had already spoken with the police; the autopsy was conducted in the presence of the lead State investigator; evidence collected during the autopsy was transmitted to the investigator; and the chain of custody was documented in the report. Id. at 316-17. The primary purpose of the autopsy report was thus "to establish facts for later use in the prosecution of [that] case." Id. at 317. In State v. Chun, 194 N.J. 54, 147, cert. denied, 555 U.S. 825, 129 S. Ct. 158, 172 L. Ed. 2d 41 (2008), the Court considered "foundational documents," or documents that establish the operational status of a device, and concluded that they fell "outside of the definition of testimonial." (pp. 16-19)

4. Applying the primary purpose test to determine whether the Confrontation Clause is implicated here, the Court acknowledges that the map was created to be later used against those charged with violations of N.J.S.A. 2C:35-7.1 and that documents prepared for use in a prosecution are generally testimonial. Nonetheless, the Court considers the map's other characteristics as well and finds that the area it depicts is an objective measurement that requires no "independent interpretation" of raw data. Although it is not a "foundational document," the map shares the objective and neutral qualities of such evidence. Because the map was not created for the primary purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution," Bass, supra, 224 N.J. at 314, its admissibility "is the concern of state and federal rules of evidence, not the Confrontation Clause." Michigan v. Bryant, 562 U.S. 344, 358-59, 131 S. Ct. 1143, 1155, 179 L. Ed. 2d 93, 107-08 (2011). (pp. 19-22)

5. The map is hearsay but is a public record within the meaning of N.J.R.E. 803(c)(8). It would be admissible if it satisfied "[t]he requirement of authentication or identification." N.J.R.E. 901. N.J.S.A. 2C:35-7.1(e) affords a separate basis for the map's admission into evidence—"upon proper authentication." Proper authentication of the map required a witness who could testify to its authenticity and be cross-examined on the methodology of the map's creation and its margin of error. That was not done here. Because the map was thus inadmissible hearsay, the State failed to offer competent evidence proving that the alleged drug transaction took place within 500 feet of a public park, an essential element of N.J.S.A. 2C:35-7.1(a). The Court is thus constrained to reverse defendant's conviction for, and to remand for a new trial on the charge of, violating N.J.S.A. 2C:35-7.1. (pp. 22-25)

6. The Court authorizes use of a "notice and demand" procedure to bypass the production of a witness to authenticate a map created pursuant to N.J.S.A. 2C:35-7.1(e) and refers to the Supreme Court Committee on Criminal Practice the crafting of such a rule. (pp. 25-26)

The judgment of the Appellate Division affirming defendant's conviction of violating N.J.S.A. 2C:35-7.1(a), count three of the indictment, is **REVERSED**, and the matter is **REMANDED** for further proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

DESHAUN P. WILSON,

    Defendant-Appellant.

Argued October 11, 2016 – Decided January 19, 2017

On certification to the Superior Court, Appellate Division, whose opinion is reported at 442 N.J. Super. 224 (App. Div. 2015).

Brian P. Keenan, Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kevin G. Byrnes, Designated Counsel, and Solmaz F. Firoz, Assistant Deputy Public Defender, on the briefs).

Sara M. Quigley, Deputy Attorney General, argued the cause for respondent (Christopher S. Porrino, Attorney General of New Jersey, attorney).

JUSTICE SOLOMON delivered the opinion of the Court.

We are called upon to determine whether the admission into evidence of a map, prepared and adopted by a governmental entity pursuant to N.J.S.A. 2C:35-7.1(e), violates the Confrontation Clause of the Sixth Amendment to the United States Constitution and the analogous New Jersey constitutional provision, which

1

guarantee an accused "the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10.  In defendant's trial, the map was used as prima facie evidence that defendant DeShaun P. Wilson was within 500 feet of a public park when he possessed for distribution "crack cocaine," in violation of N.J.S.A. 2C:35-7.1(a).

We conclude that the map, commissioned and adopted by the Union County Board of Chosen Freeholders ("Board") pursuant to N.J.S.A. 2C:35-7.1(e), is nontestimonial and that its admission therefore did not violate defendant's confrontation rights.  We also find that such maps are admissible, if properly authenticated, under N.J.S.A. 2C:35-7.1(e) and as public records pursuant to N.J.R.E. 803(c)(8).  Because the map was not properly authenticated, however, we are constrained to reverse the Appellate Division's judgment that the map was properly admitted into evidence at trial and to remand the matter for a new trial on the count of defendant's conviction that depended on the map.

I.

The facts germane to this appeal are as follows.  City of Elizabeth detectives observed defendant engage in the apparent sale of "crack cocaine" in the area of Leggett Park, a public park in Elizabeth.  Defendant was charged with third-degree possession of a controlled dangerous substance (CDS), N.J.S.A.

2

2C:35-10(a)(1) (count one); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3) (count two); and second-degree possession of CDS with intent to distribute in or within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (count three). Defendant was indicted on those charges and, following pretrial motions, was tried before a jury in the Union County Superior Court.

During trial, the State sought to admit into evidence three related documents: a map of Leggett Park and the surrounding area ("map"); an affidavit by an assistant Union County prosecutor, Richard Rodbart; and Resolution No. 1513-99, passed by the Board in 1999 to adopt a book of drug-free-zone maps.

The map, titled "UNION COUNTY DRUG FREE ZONES," illustrates with a circle a 500-foot radius around Leggett Park. The legend notes that the map was certified in 1998 by "Armand A. Fiorletti, P.E., Union County Engineer."

The affidavit, offered by the State to authenticate the map, states that Rodbart personally worked with the Union County Engineer in contracting a third party, T&M Associates, to produce maps depicting each public housing facility, public park, and public building, as those terms are defined in N.J.S.A. 2C:35-7.1(f). The affidavit notes that the maps were contained in a master notebook.

3

The third document presented by the State, Resolution No. 1513-99, indicates that Union County contracted with T&M Associates to create maps of all 500-foot drug-free zones within the county in coordination with, and under the supervision of, Fiorletti. The resolution states that the purpose of depicting the 500-foot areas was to "introduc[e] said map[s] as evidence of the location and boundaries of those areas within Union County in criminal prosecutions under N.J.S.A. 2C:35-7.1." Through the resolution, the Board adopted the maps "as an official finding and record of the location and boundaries of the area or areas on or within 500 feet of public housing facilities, public parks, and public buildings" within Union County.

Defendant objected to the admission of the map, affidavit, and resolution. He stressed that the police detective called by the State to testify about the map did not work for one of the city's parks, zoning, or recreation departments and could not identify Leggett Park as a public park or authenticate the map as accurate. Defendant also asserted that Rodbart's affidavit was inadmissible as hearsay and did not qualify as a self-authenticating document. Defendant emphasized that he never had an opportunity to cross-examine Rodbart.

The court disagreed and admitted the documents into evidence. The jury was unable to reach a unanimous verdict, and the court declared a mistrial.

A second trial commenced, during which the State called as a witness a detective from the prosecutor's office. The detective described the map as "a standard 500-foot map" and explained that the circle it displays represents a 500-foot radius from a public building or park. He testified that Leggett Park is in the center of the circle and that the alleged narcotics transaction occurred within 500 feet of the park. Defense counsel did not object during the State's direct examination.

On cross-examination, the detective confirmed that the map was drafted in 1998, that it was certified by an engineer, and that the prosecutor's office relies on the city or county engineers for the production and provision of such maps. The detective also testified that he did not create the map or take the measurements that establish the circle on the map. With respect to the map's accuracy, he stated that he "can only go by what the city engineer has made."

Later, outside the presence of the jury, the State attempted to move the map and other documents into evidence. The State asserted that the map, affidavit, and resolution qualified as self-authenticating documents under N.J.R.E. 902

5

and as public records under N.J.R.E. 803(c)(8). The State also contended that the map was admissible under N.J.S.A. 2C:35-7.1. Defense counsel objected, claiming that the affidavit refers to a book of maps but does not specifically identify the map as part of that book. The defense also asserted that the affidavit was hearsay and that it was unclear whether the county engineer referred to therein was the same engineer who certified the map. Finally, defense counsel challenged the foundational basis for the map's admission, maintaining that the detective's testimony was insufficient. Over those objections, the court admitted the documents into evidence.

Defendant was convicted of all charges, including count three of the indictment, which charged distribution of CDS within 500 feet of a public park in violation of N.J.S.A. 2C:35-7.1. The Appellate Division affirmed the conviction, holding that the map was nontestimonial and that its admission did not violate defendant's confrontation rights. State v. Wilson, 442 N.J. Super. 224, 248 (App. Div. 2015). Although the panel recognized that the map was hearsay, it found the map admissible under our Rules of Evidence and N.J.S.A. 2C:35-7.1(e). Ibid.

This Court granted defendant's petition for certification "limited to the issue of whether defendant's confrontation rights were violated by the admission into evidence of a map to

6

establish the crime of distribution of CDS within 500 feet of a public park." State v. Wilson, 224 N.J. 119 (2016).

II.

Defendant contends that the Confrontation Clause is implicated here because the map is testimonial under New Jersey's primary purpose test. He maintains that the map serves no purpose other than to prosecute individuals charged with violating N.J.S.A. 2C:35-7.1 and was created to prove an element of that criminal offense. He characterizes the map as "functionally identical" to live, in-court testimony that drug distribution at a specific location was measured to be within 500 feet of a public park. Defendant argues that his confrontation rights were violated because the State failed to produce a witness who either prepared the map or otherwise had sufficient knowledge of the map's accuracy.

Defendant also contends that the map is inadmissible hearsay. He maintains that the public records exception to the hearsay rule, N.J.R.E. 803(c)(8), does not apply. He argues that T&M Associates, as a private company, does not constitute a public official. Defendant adds that the record is unclear as to whether the former county engineer who oversaw the map-making process was a public official at that time, acting within his official duties while supervising the map's creation.

7

Defendant also asserts that the business records exception to the rule against hearsay, N.J.R.E. 803(c)(6), is inapplicable because the map is not relied upon by a business or government for any regularly conducted business activity other than investigations and prosecutions under N.J.S.A. 2C:35-7.1.

The State argues that defendant waived his Confrontation Clause challenge because, at trial, defense counsel objected only on evidentiary grounds. The State maintains that this objection was untimely and improper because it did not refer specifically to the Confrontation Clause, the Sixth Amendment, or Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

The State also claims that, even if we find the Confrontation Clause challenge properly raised, defendant's rights were not violated. The State contends that the map is nontestimonial, claiming no difference between the map and a certified map of New Jersey used for jurisdictional purposes.

In support, the State analogizes the map to an Alcohol Influence Report (AIR) held to be nontestimonial in State v. Chun, 194 N.J. 54, 142-43, cert. denied, 555 U.S. 825, 129 S. Ct. 158, 172 L. Ed. 2d 41 (2008), because, like the AIR, the map here does not report a past event. In addition, the State argues that this case lacks the common characteristic of documents held to be testimonial in State v. Michaels, 219 N.J.

8

1, cert. denied, ___ U.S. ___, 135 S. Ct. 761, 190 L. Ed. 2d 635 (2014), State v. Roach, 219 N.J. 58 (2014), cert. denied, ___ U.S. ___, 135 S. Ct. 2348, 192 L. Ed. 2d 148 (2015), and State v. Bass, 224 N.J. 285 (2016), where the documents were "prepared after the commencement of a criminal investigation to be used against a particular individual at his trial."

Additionally, the State claims that the map is admissible as a public record under N.J.R.E. 803(c)(8) or, alternatively, as a business record under N.J.R.E. 803(c)(6).

### III.

### A.

Before addressing the law applicable to the parties' arguments, we must first decide whether defendant waived his Confrontation Clause objection.

In the context of Confrontation Clause jurisprudence, each state has the authority "to adopt procedural rules governing objections." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 327, 129 S. Ct. 2527, 2541, 174 L. Ed. 2d 314, 331 (2009). In the exercise of this authority, this Court has held that a defendant does not waive a Confrontation Clause objection merely because he waits until a witness's testimony is underway to object, "particularly where . . . the objection is premised on the form and content of the witness's testimony." Bass, supra, 224 N.J. at 311-12. Furthermore, we do not require a defendant to

specifically use the terms "Confrontation Clause" or "Sixth Amendment" or to refer to Crawford, supra, to preserve a Confrontation Clause challenge.  Id. at 312.  Nevertheless, "a defendant [generally] must attempt to exercise his confrontation right and object when necessary, if he wishes later to claim that he was denied that right."  State v. Williams, 219 N.J. 89, 93 (2014), cert. denied, ___ U.S. ___, 135 S. Ct. 1537, 191 L. Ed. 2d 565 (2015).

Here, unlike the defendant in Williams, supra, 219 N.J. at 100-01, who raised no objection to the testimony he later claimed violated his confrontation rights, defendant asserted his objection before the trial court.  He cited an objection made at his first trial and "alluded to an inability to cross-examine the individual who had made the [map's] measurements."  Wilson, supra, 442 N.J. Super. at 235 n.4.  Defendant also highlighted the State's failure to present an adequate witness to testify about the map, asserting that the detective's testimony was insufficient.

Although defendant did not object to the map during the detective's testimony, the map was not admitted into evidence until the trial judge requested that the parties review the materials offered.  When the State attempted to admit the map, defense counsel immediately objected.  Our Court Rules require only that the objection be raised "at the time the ruling or

10

order is made or sought." R. 1:7-2. Therefore, we find that defendant's objection was timely.

We also find the substance of defendant's objection to be sufficient. In addition to a hearsay objection, defense counsel contended that the detective's testimony was inadequate -- the State "could have brought someone in to testify to [the map or affidavit]" -- and the foundation for the map's admission was deficient. We find that this was an objection as to form and content. See Bass, supra, 224 N.J. at 311-12.

Our courts will not find waiver of an objection unless counsel's declarations are in some way lacking. See, e.g., State v. T.J.M., 220 N.J. 220, 231 (2015) (finding objection not clearly raised when counsel made only "tepid complaint" before dropping argument and proceeding to argue another issue); State v. Nunez, 436 N.J. Super. 70, 76 (App. Div. 2014) (applying plain error rule because counsel objected on incorrect grounds). Here, the defense clearly asserted the correct grounds for its objection at the time the trial court ruled on admission of the map. We therefore hold that defendant's Confrontation Clause challenge was timely and adequate.

B.

Having found that defendant did not waive his Confrontation Clause challenge, we now address the substantive law applicable to this appeal. We begin by noting that the satisfaction of

11

defendant's confrontation rights is a question of law, which we review de novo.  See State v. Jones, 224 N.J. 70, 85 (2016).

The Sixth Amendment to the United States Constitution and Article 1, Paragraph 10 of the New Jersey Constitution, in nearly identical language, provide that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI; N.J. Const. art. 1, ¶ 10.  The Confrontation Clause affords a procedural guarantee that the reliability of evidence will be tested "in a particular manner" through "the crucible of cross-examination."  Crawford, supra, 541 U.S. at 61, 124 S. Ct. at 1370, 158 L. Ed. 2d at 199; State ex rel. J.A., 195 N.J. 324, 342 (2008) ("[The] right embodied in the Confrontation Clause expresses a preference for the in-court testimony of a witness, whose veracity can be tested by the rigors of cross-examination.").

Under the standard set forth in Crawford, a testimonial statement against a defendant by a non-testifying witness is inadmissible under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him or her.  Crawford, supra, 541 U.S. at 59, 124 S. Ct. at 1369, 158 L. Ed. 2d at 197.  The threshold issue is, thus, whether the proffered statement is "testimonial" in nature.  Although the Crawford Court refrained from offering a

12

"comprehensive definition" of the term, it provided some initial guideposts.  Id. at 68, 124 S. Ct. at 1374, 158 L. Ed. 2d at 203.

First, quoting an 1828 English dictionary, the Court noted that "testimony" typically refers to "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."  Id. at 51, 124 S. Ct. at 1364, 158 L. Ed. 2d at 192 (alteration in original).  From this definition, the Court concluded that a formal out-of-court statement to government officers "bears testimony" against the accused whereas "a casual remark to an acquaintance does not."  Ibid.

Second, the Court provided the following as a non-exhaustive list of testimonial statements:

> ex parte in-court testimony or its functional equivalent -- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially[;] . . . extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions[;] . . . statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.
>
> [Id. at 51-52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193 (emphases added) (citations and internal quotation marks omitted).]

13

After Crawford, the United States Supreme Court "labored to flesh out what it means for a statement to be 'testimonial.'" Ohio v. Clark, 576 U.S. ___, ___, 135 S. Ct. 2173, 2179, 192 L. Ed. 2d 306, 314 (2015). It developed the "primary purpose" test to determine whether an out-of-court statement is testimonial and, accordingly, falls within the ambit of the Confrontation Clause. Id. at ___, 135 S. Ct. at 2179-80, 192 L. Ed. 2d at 314. In Davis v. Washington, the Court concluded that statements made outside the stationhouse setting with the primary purpose of enabling police assistance in an ongoing emergency were nontestimonial. 547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74, 165 L. Ed. 2d 224, 237 (2006). The Davis Court noted, however, that statements with the primary purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution" would be testimonial. Id. at 822, 126 S. Ct. at 2273-74, 165 L. Ed. 2d at 237.

Later, in Michigan v. Bryant, the Court explained that "[w]hen, as in Davis, the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope of the [Confrontation] Clause." 562 U.S. 344, 358, 131 S. Ct. 1143, 1155, 179 L. Ed. 2d 93, 107 (2011). The Court recognized that, aside from ongoing emergencies, circumstances may arise "when a statement is not procured with a primary

14

purpose of creating an out-of-court substitute for trial testimony." Ibid. "Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." Id. at 359, 131 S. Ct. at 1155, 179 L. Ed. 2d at 107-08. Accordingly, "standard rules of hearsay, designed to identify some statements as reliable, will be relevant" to the application of the primary purpose test. Id. at 358-59, 131 S. Ct. at 1155, 179 L. Ed. 2d at 107.

A year after Bryant, the Supreme Court's fractured decision in Williams v. Illinois, 567 U.S. ___, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012), created confusion as to the viability and formulation of the primary purpose test. See Michaels, supra, 219 N.J. at 25-28 (discussing Williams plurality opinion). In light of this uncertainty, we upheld the primary purpose test originally announced in Davis and developed in pre-Williams case law. Id. at 31 ("We find Williams's force, as precedent, at best unclear."). The soundness of our decision to do so was later affirmed by the Supreme Court's decision in Ohio v. Clark, where the Court confirmed that "the question is whether, in light of all the circumstances . . . the 'primary purpose' of the [evidence] was to 'creat[e] an out-of-court substitute for trial testimony.'" Clark, supra, 576 U.S. at ___, 135 S. Ct. at 2180, 192 L. Ed. 2d at 315 (second alteration in original)

15

(quoting Bryant, supra, 562 U.S. at 358, 131 S. Ct. at 1155, 179 L. Ed. 2d at 107).

This Court has since applied the pre-Williams primary purpose test in various Confrontation Clause cases involving the admission of forensic reports and medical examiner testimony. See Michaels, supra, 219 N.J. at 31-32; Roach, supra, 219 N.J. at 74-75; Bass, supra, 224 N.J. at 317. In Michaels, after a fatal motor vehicle accident, the police sent the defendant's blood sample to a private laboratory where approximately fourteen analysts performed tests that revealed that the sample contained traces of cocaine and other drugs. Michaels, supra, 219 N.J. at 8-9. The results of the blood test were provided to a supervisor at the lab, who then wrote, certified, and signed a report that concluded that the presence of these toxins in the defendant's blood "would have caused [the defendant] to be impaired and unfit to operate a motor vehicle." Id. at 9. We recognized that the report was testimonial because its primary purpose was to serve as "a direct accusation against [the] defendant." Id. at 44.

Similarly, in Roach, we found that a DNA profile created by a State forensic scientist from machine-generated data was testimonial. Roach, supra, 219 N.J. at 81. We reasoned that it was the scientist's "subjective analysis" and "independent interpretation" of the raw data that converted the DNA profile

16

into "unmistakably testimonial material subject to the Confrontation Clause." Ibid.

Our opinion in Bass is particularly relevant to our analysis here. There, in a murder trial, the State's expert was permitted to read to the jury portions of an autopsy report that had been prepared by a medical examiner who was deceased at the time of trial. Bass, supra, 224 N.J. at 292. In deciding whether that testimony violated the defendant's confrontation rights, we found the autopsy report to be testimonial. Id. at 316. The autopsy was conducted after a homicide investigation had begun; the defendant was a suspect in the homicide and had already spoken with the police; the autopsy was conducted in the presence of the lead State investigator; evidence collected during the autopsy was transmitted to the investigator; and the chain of custody was documented in the report. Id. at 316-17. Therefore, we found that the primary purpose of the autopsy report was "to establish facts for later use in the prosecution of [that] case." Id. at 317.

We conclude our review of Confrontation Clause jurisprudence by noting that this Court has twice decided whether a defendant's confrontation rights are implicated by "foundational documents," or documents that establish the operational status of a device, such as one that measures a person's blood alcohol content. See, e.g., Chun, supra, 194

17

N.J. at 64-65; State v. Sweet, 195 N.J. 357, 360 (2008), cert. denied, 557 U.S. 934, 129 S. Ct. 2858, 174 L. Ed. 2d 601 (2009).

Chun primarily involved the reliability of the Alcotest, a device to measure a person's blood alcohol level, and the admissibility of the AIR, the printout on which the Alcotest reports its readings. Chun, supra, 194 N.J. at 64-65, 67, 77. Applying the Davis primary purpose test and the principles set forth in Crawford, we concluded that the AIR was admissible as a business record pursuant to N.J.R.E. 803(c)(6). Id. at 141-42, 147. We found that "the AIR falls outside of the definition of testimonial" for the following reasons:

> First, the AIR reports a present, and not a past, piece of information or data. Second, although given in the presence of a police officer who operates the device, nothing that the operator does can influence the machine's evaluation of the information or its report of the data. Third, although the officer may have a purpose of establishing evidence of a BAC in excess of the permissible limit, the machine has no such intent and may as likely generate a result that exonerates the test subject as convicts him or her.
>
> [Id. at 147.]

In Sweet we addressed whether the Confrontation Clause "bar[s] the introduction into evidence of foundational documents concerning the operational status of a Breathalyzer[], a device used to measure a subject's blood alcohol content." Sweet, supra, 195 N.J. at 360. Relying on Chun, we held that the

18

foundational documents at issue qualified as business records. Id. at 369-71. We also noted that these documents were admitted by the State "as proof that the Breathalyzer[] device in use was in good working order." Id. at 370. We reviewed the dictates of Crawford and concluded that none of the offered documents "relate[d] to or report[ed] a past fact [or were] generated or prepared in order to establish any fact that [was] an element of the offense." Id. at 373-74 (quoting Chun, supra, 194 N.J. at 144).

IV.

Having reviewed the applicable Confrontation Clause precedent, we must determine whether the admission into evidence of the map, prepared and adopted by a governmental entity pursuant to N.J.S.A. 2C:35-7.1(e) and used as prima facie evidence that defendant was within 500 feet of a public park when he possessed for distribution "crack cocaine," violates the Confrontation Clause. We acknowledge that there is no direct precedent dealing with the kind of evidence under consideration here and its Confrontation Clause implications.

Our analysis requires a clear understanding of the language of N.J.S.A. 2C:35-7.1(a) and (e). N.J.S.A. 2C:35-7.1(a) makes it a second-degree crime to "possess[] with intent to distribute a controlled dangerous substance . . . while in, on or within 500 feet of the real property comprising . . . a public park."

19

The Legislature provided that "prima facie evidence of the location and boundaries of" the places set forth in N.J.S.A. 2C:35-7.1(a) can be established by creating a map pursuant to N.J.S.A. 2C:35-7.1(e):

> In a prosecution under this section, a map produced or reproduced by any municipal or county engineer for the purpose of depicting the location and boundaries of . . . the area in or within 500 feet of a public park, . . . or a true copy of such a map, shall, upon proper authentication, be admissible and shall constitute prima facie evidence of the location and boundaries of those areas, provided that the governing body of the municipality or county has adopted a resolution or ordinance approving the map as official finding and record of the location and boundaries of the area or areas on or within 500 feet of . . . a public park . . . . The original of every map approved or revised pursuant to this section, or a true copy thereof . . . shall be maintained as an official record of the municipality or county. Nothing in this section shall be construed to preclude the prosecution from introducing or relying upon any other evidence or testimony to establish any element of this offense . . . .
>
> [N.J.S.A. 2C:35-7.1(e) (emphases added).]

We must apply the primary purpose test reaffirmed in Michaels to a map created pursuant to N.J.S.A. 2C:35-7.1(e) to determine whether the Confrontation Clause is implicated here. In doing so, we first acknowledge that the map was created to be later used against those charged with violations of N.J.S.A. 2C:35-7.1 and that documents prepared for use in a prosecution

20

are generally testimonial.  Nonetheless, we consider as well the map's other characteristics.

The map constitutes prima facie evidence of an element of "possessi[on] with intent to distribute a controlled dangerous substance . . . while in, on or within 500 feet of the real property comprising . . . a public park," a violation of N.J.S.A. 2C:35-7.1(a).  Thus, the map creates a rebuttable presumption of the proximity of the alleged drug transaction to the park.  It does not conclusively establish defendant's guilt.

The map is unlike the forensic report in Michaels, which opined that drugs found in the defendant's blood rendered her "impaired and unfit to operate a motor vehicle."  Michaels, supra, 219 N.J. at 9.  Nor is the map the product of "subjective analysis" as was the DNA profile in Roach.  Instead, the 500-foot area it depicts is an objective measurement that requires no "independent interpretation" of raw data.  Roach, supra, 219 N.J. at 81.  The map is the raw data.

Drawing from Chun and Sweet, we observe that the map is not a nontestimonial foundational document -- it is not concerned with the "operational status" of anything.  Nonetheless, it shares the objective and neutral qualities of the evidence in those cases.  Although the map is used in criminal prosecutions and was created, in part, for that purpose, it does not target a particular person.  It may establish a rebuttable presumption of

21

proximity to the public park just as it may exonerate a person charged with violating N.J.S.A. 2C:35-7.1(a). Furthermore, the map reports a present fact: it reveals those locations within 500 feet of Leggett Park.

Importantly, the map was not created in response to a criminal event. The map was created years before the commission of any of the offenses alleged here. When the map was produced, there was no alleged crime committed by defendant. Nor was the map created to establish a fact relevant to an ongoing police investigation.

Therefore, the map was not created for the primary purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." Bass, supra, 224 N.J. at 314 (alterations in original) (quoting Bullcoming v. New Mexico, 564 U.S. 647, 659 n.6, 131 S. Ct. 2705, 2714 n.6, 180 L. Ed. 2d 610, 620 n.6 (2011)). "Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." Bryant, supra, 562 U.S. at 359, 131 S. Ct. at 1155, 179 L. Ed. 2d at 107-08. Consequently, we must apply our evidence rules to determine whether the map is admissible.

V.

"Hearsay is not admissible except as provided by [the Rules of Evidence] or by other law." N.J.R.E. 802. Under our

22

evidence rules, the map is hearsay and is, therefore, admissible if an exception to the prohibition against hearsay applies.

One such exception allows for the admissibility of a document that is a public record. A document is admissible as a public record if it is

> a statement contained in a writing made by a public official of an act done by the official or an act, condition, or event observed by the official if it was within the scope of the official's duty either to perform the act reported or to observe the act, condition, or event reported and to make the written statement.
>
> [N.J.R.E. 803(c)(8).]

We find that the map is a public record within the meaning of N.J.R.E. 803(c)(8). The map was certified by the Union County Engineer, a "public official," who supervised the mapping process for which the county had contracted. Observation of the map's creation thus fell "within the scope of [his] duty." Ibid. Accordingly, the map would be admissible under N.J.R.E. 803(c)(8) if it satisfied "[t]he requirement of authentication or identification," which is "a condition precedent to admissibility." N.J.R.E. 901.[1]

---

[1] The State argues that the map is also admissible as a business record. Because the map was created pursuant to N.J.S.A. 2C:35-7.1, and not in Union County's "regular course of business," N.J.R.E. 803(c)(6), we find the business record exception inapplicable.

23

N.J.S.A. 2C:35-7.1(e) affords a separate basis for the map's admission into evidence. See N.J.R.E. 802. The statute provides that a map "depicting the location and boundaries of . . . the area in or within 500 feet of a public park" is admissible as "prima facie evidence of the location and boundaries of [the 500-foot] areas." N.J.S.A. 2C:35-7.1(e). However, the statute explicitly conditions the map's use as such evidence "upon proper authentication" and requires that the municipality have approved the map by "resolution or ordinance" as an official finding and record of the 500-foot areas. Ibid.

Here, the Board adopted Resolution No. 1513-99 approving the notebook of which the map was a part. Therefore, the map would be admissible in defendant's prosecution for violating N.J.S.A. 2C:35-7.1(a) if it were properly authenticated. N.J.S.A. 2C:35-7.1(e).

The State argues that, because the map's legend contains a certification by a county engineer, it is self-authenticating under N.J.R.E. 902. The State maintains that the assistant prosecutor's affidavit and the Board resolution therefore provided a sufficient foundation for the map's admission. We disagree.

Proper authentication of the map required a witness who could testify to its authenticity and be cross-examined on the methodology of the map's creation and its margin of error. See

24

State v. Simbara, 175 N.J. 37, 47-48 (2002) (noting that State must prove reliability of public record).  That was not done here.

Because the map was admitted into evidence without proper authentication, it did not satisfy the requirements of N.J.S.A. 2C:35-7.1(e) and constituted inadmissible hearsay.  The map was the State's sole evidence that the offense occurred within 500 feet of Leggett Park.  Therefore, because the map is inadmissible, the State failed to offer competent evidence proving that the alleged drug transaction took place within 500 feet of a public park, an essential element of N.J.S.A. 2C:35-7.1(a).  We are thus constrained to reverse defendant's conviction for, and to remand for a new trial on the charge of, violating N.J.S.A. 2C:35-7.1.

We hereby authorize use of a "notice and demand" procedure to bypass the production of a witness to authenticate a map created pursuant to N.J.S.A. 2C:35-7.1(e).  See Williams, supra, 219 N.J. at 102.  At defendant's retrial, and in any prosecution under N.J.S.A. 2C:35-7.1, the State may give notice to a defendant, at least thirty days before trial, that a map prepared pursuant to N.J.S.A. 2C:35-7.1(e) will be offered at trial for a violation of N.J.S.A. 2C:35-7.1 and may demand an objection to its use within ten days.  An objection will require the State to produce an authenticating witness who can testify

25

to the map's authenticity and be cross-examined on the methodology of the map's creation and its margin of error. If there is no such objection, the map may be admitted without production of an authenticating witness. We refer to the Supreme Court Committee on Criminal Practice the crafting of a rule, with any necessary improvements, on pretrial notice and demand in prosecutions under N.J.S.A. 2C:35-7.1.

                              VI.

The judgment of the Appellate Division affirming defendant's conviction of violating N.J.S.A. 2C:35-7.1(a), count three of the indictment, is reversed, and the matter is remanded for further proceedings consistent with this opinion.


        CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion.

26