**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3069-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CARLOS M. CINTRON, JR., a/k/a
CARLOS M. CITRON, CARLOS M.
JR., and CARLOS CIBTRON,

    Defendant-Appellant.

_____

        Submitted February 13, 2017 — Decided August 29, 2017

        Before Judges Sabatino and Nugent.

        On appeal from Superior Court of New Jersey,
        Law Division, Union County, Ind. No. 13-07-
        0625.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Kevin G. Byrnes, Designated
        Counsel, on the brief).

        Grace H. Park, Acting Union County Prosecutor,
        attorney for respondent (Bryan S. Tiscia,
        Special Deputy Attorney General/Acting
        Assistant Prosecutor, of counsel and on the
        brief).

PER CURIAM

After observing defendant Carlos M. Cintron, Jr. complete a hand-to-hand marijuana sale on an Elizabeth street, law enforcement officers obtained a search warrant for his apartment, where they seized marijuana and Ziploc bags. Following defendant's indictment, a jury found him guilty of controlled dangerous substance (CDS) offenses and the trial court sentenced him to an aggregate four-year prison term. Defendant appeals from the December 5, 2014 judgment of conviction.

On appeal, defendant argues the trial court erroneously denied his suppression motion. Defendant also contends he was denied due process of law for the following reasons: the State did not provide him with adequate notice of the charges; his right to confront witnesses was violated by the admission of hearsay statements and by an officer's statements implying evidence outside the record inculpated him; the State did not establish an uninterrupted chain of custody; the prosecutor nullified the jury's power of nullification; and the trial court improperly instructed the jury. Lastly, defendant argues his sentence is excessive.

Defendant did not raise at trial many of the arguments he raises on appeal. We find no plain error in the arguments he now raises for the first time, and we find no merit in the remaining arguments. Accordingly, we affirm his convictions and sentence.

In July 2013, a Union County grand jury charged defendant in a four-count indictment with fourth-degree distribution of marijuana, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:25-5(b)(12) (count one); third-degree distribution of marijuana within five hundred feet of a public park, N.J.S.A. 2C:35-7.1 (count two); fourth-degree possession of marijuana with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(12) (count three); and third-degree possession of marijuana with the intent to distribute within five hundred feet of a public park, N.J.S.A. 2C:35-7.1 (count four).[1] In addition, police charged defendant in a complaint with the disorderly persons offenses of possession of less than fifty grams of marijuana, N.J.S.A. 2C:35-10(a)(4), and possession of drug paraphernalia with the intent to use, N.J.S.A. 2C:36-2.

Following the indictment defendant filed a suppression motion, which the trial court ultimately denied following a limited hearing. The court declined to conduct a hearing concerning the reliability of a confidential informant (CI), who had given police information used to obtain the search warrant for defendant's residence.

---

[1] Each count alleged defendant possessed marijuana "in a quantity of less than one ounce."

The State dismissed the indictment's third and fourth counts before trial and a jury found defendant guilty of the first and second counts. The court found defendant guilty of the disorderly persons CDS offenses.

The court sentenced defendant to a one-year prison term on count one and to a concurrent four-year prison term on count two; imposed appropriate fines and assessments; and revoked defendant's driving privileges for six months. The court fined defendant for the disorderly persons offenses.

The State developed the following proofs at trial. On April 5, 2013, at approximately 3:00 p.m., Officer Carmine Giannetta and Detective Athanasio Mikros began conducting surveillance in the area of Sixth and Livingston Streets in Elizabeth. They saw defendant exit the rooming house where he lived and enter his car. Defendant drove away, and the officers followed him for approximately one mile until he stopped in front of a residence. Officer Giannetta watched as a Hispanic male, later identified as Omar Martinez, came out of the residence and approached defendant's car. Defendant and Martinez spoke briefly, Martinez handed defendant money, and defendant handed Martinez a few "small items." Martinez returned to his residence and defendant drove away. Officer Giannetta contacted Lieutenant Keily and Officer Jorge Joaquim, who followed defendant.

Officer Giannetta and Detective Mikros knocked on the front door of Martinez's residence. A woman invited the officers inside where they encountered Martinez. Based on a conversation with Martinez, Officer Giannetta entered a bathroom and seized three bags of marijuana from under a carpet wrapped around the base of the toilet. Officer Giannetta secured the marijuana in his pocket, placed Martinez under arrest, and returned to defendant's apartment.

Officer Giannetta testified he recognized the contents of an exhibit — three yellow Ziploc bags of marijuana inside a larger plastic bag — as the CDS he seized from Martinez's home. Asked how the three the smaller "baggies" got into the larger bag, Officer Giannetta explained, "[w]e bring the evidence into our office. We have evidence bags, tape and so forth. The officer places it in the bag. He puts all the important information on the front here and we seal it and we place it in [Elizabeth Police Department] property." Officer Giannetta identified the blue tape on one of the "baggies" as coming from the Union County Prosecutor's Office Laboratory.

A-3069-14T3

Officer Giannetta identified the location of Martinez's house on a "500-foot map" as being within five hundred feet of a public park.[2]

Meanwhile, Lieutenant Keily and Officer Joaquim, assisted by uniformed officers driving a marked police vehicle, stopped defendant's car. The officers arrested defendant, searched him incident to the arrest, and seized from his person two cell phones, keys, and $54 in cash. The uniformed officers transported defendant to police headquarters. Lieutenant Keily and Officer Joaquim drove to defendant's residence to meet Officer Giannetta and Detective Mikros. Lieutenant Keily kept defendant's keys.

Once the four officers arrived at defendant's residence, Lieutenant Keily gave Detective Mikros defendant's keys. The officers were not certain which of the four rooms in the rooming house was defendant's. That dilemma was resolved when defendant's cousin, who resided in a neighboring room, came up the staircase of the residence. The officers learned the building was a rooming house with a common bathroom and four numbered doors, each leading

---

[2]   Before the trial started, defense counsel told the court there was no problem with the map, only whether Martinez's house was located within the 500-foot area. During his trial testimony, Officer Giannetta drew an "X" on an enlarged version of the map to show where within the 500 feet Martinez's residence was located. In summation, defendant conceded Martinez's residence was within 500 feet of a public park.

to a separate residential room. Detective Mikros used defendant's key to unlock defendant's front door, but did not enter the room. Rather, after securing the door shut, Detective Mikros and Officer Giannetta left to obtain "legal authorization" to enter the room.[3] After receiving such authorization, the officers returned to defendant's room and proceeded inside.

Defendant's room was approximately six feet long by eight feet wide. Detective Mikros noted the room contained a bed, a small refrigerator, a television, a dresser, and men's clothing. After searching the room, Detective Mikros found and seized a folder containing various documents bearing defendant's personal information and two photographs of defendant. In addition, the detective discovered a sandwich bag containing suspected marijuana and two empty yellow Ziploc bags. During his trial testimony, Detective Mikros identified these items as those he seized from defendant's room. The items were contained within a sealed Elizabeth Police evidence bag with yellow and white markings and blue tape made or placed by someone in "the lab."

---

[3] To avoid undue prejudice to defendant in front of the jury, the court suggested the phrase "legal authorization" as an appropriate alternative to "search warrant." The judge instructed the jury not to speculate what the basis of that "legal authorization" was.

Following the close of the State's case, defendant made "a motion for acquittal," which the court denied. Defendant called two cousins as witnesses. Juan Andino testified he lived in an adjacent room of the rooming house and worked across the street. Shortly before lunch, between approximately noon and 1:30 p.m. on the day defendant was arrested, Andino saw police outside of the rooming house. Two police officers were inside the open garage door and another stood near a parked car. Andino saw a fourth officer by the staircase of the residence. That officer followed Andino as he walked into the building.

Inside the common area, Andino noticed the officer had defendant's house keys, which he used to enter defendant's room. Andino went to his own room, and when he came out, the police said he could not leave. For the next hour, Andino heard the officers searching defendant's room. After receiving permission to leave, Andino observed defendant's room in a "disheveled" condition as if the police had "turned it upside down."

Defendant's other cousin, Edward Rivera, worked in the garage below the rooming house. When Rivera arrived at the garage around noon, he saw law enforcement officers upstairs, where they remained for approximately three or four hours. However, because he never went upstairs, Rivera did not know the specific nature of the police activity.

A-3069-14T3

In summation, defendant argued the State's case was mostly circumstantial, fraught with problems, and did not establish beyond a reasonable doubt either that defendant was at Martinez's house and distributed three bags of marijuana, or that defendant intended to distribute drugs. The jury disagreed and convicted defendant.

On appeal, defendant argues:

POINT I

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE FAILURE OF THE TRIAL COURT TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE OF POSSESSION OF MARIJUANA (Not Raised Below).

POINT II

THE DEFENDANT'S RIGHT TO CONFRONTATION AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 10 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED (Not Raised Below).

    A. The Police Improperly Implied that They Had Information [O]utside the Scope of the Trial Record that Implicated the Defendant in the Commission of the Crimes.

    B. The [T]rial Court Erroneously Admitted Hearsay Paper Evidence Prepared [b]y the Government [t]o Prove an Essential Element of the Crime.

A-3069-14T3

POINT III

THE DEFENDANT'S MOTION FOR A JUDGEMENT OF
ACQUITTAL SHOULD HAVE BEEN GRANTED.

POINT IV

THE TRIAL COURT FAILED TO INSTRUCT THE JURORS
ON ALL THE ESSENTIAL ELEMENTS OF THE
DISTRIBUTION OF MARIJUANA (Not Raised Below).

POINT V

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW
AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO
THE <u>UNITED STATES CONSTITUTION</u> AND ART. 1,
PAR. 1 OF THE <u>NEW JERSEY CONSTITUTION</u> WAS
VIOLATED WHEN THE PROSECUTOR NULLIFIED THE
JURY'S POWER OF NULLIFICATION.   (Not Raised
Below).

POINT VI

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW
AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO
THE <u>UNITED STATES CONSTITUTION</u> AND ART. 1,
PAR. 1 OF THE <u>NEW JERSEY CONSTITUTION</u> WAS
VIOLATED BY THE FAILURE OF THE STATE TO SHOW
A PROPER FOUNDATION AND AN UNINTERRUPTED CHAIN
OF CUSTODY.

POINT VII

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW
AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO
THE <u>UNITED STATES CONSTITUTION</u> AND ART. 1,
PAR. 1 OF THE <u>NEW JERSEY CONSTITUTION</u> WAS
VIOLATED BY THE ACCUMULATION OF TRIAL ERRORS
(Partially Raised Below).

POINT VIII

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW
AS GUARANTEED BY THE FOURTH AMENDMENT TO THE
<u>UNITED STATES CONSTITUTION</u> AND ART. 1, PAR. 7

A-3069-14T3

OF THE <u>NEW JERSEY CONSTITUTION</u> WAS VIOLATED: THE AFFIDAVIT CONTAINED INADEQUATE INFORMATION TO SUPPORT PROBABLE CAUSE, AND IT CONTAINED INTENTIONALLY OR RECKLESSLY MISLEADING STATEMENTS AND OMISSIONS.

POINT IX

THE DEFENDANT'S RIGHT TO PROCEDURAL DUE PROCESS AND FAIR NOTICE AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE <u>UNITED STATES CONSTITUTION</u> AND ART. 1, PAR. 1 OF THE <u>NEW JERSEY CONSTITUTION</u> WAS VIOLATED BY THE STATE'S FAILURE TO PROVIDE ADEQUATE NOTICE OF THE CHARGES TO PERMIT THE DEFENDANT TO RAISE A COMPLETE DEFENSE.

POINT X

THE SENTENCE IS EXCESSIVE

    A. The Trial Court Improperly Balanced the Aggravating and Mitigating Factors.

    B. The Imposition of a Four-Year Period of Parole Ineligibility for a Gram of Marijuana is Wholly Disproportionate to the Crime, Shocks the Judicial Conscience, and is Cruel and Unusual.

    C. Merger Applies.

Defendant did not raise before the trial court the arguments he now raises in Points I, II, IV and V. For that reason, we review them for plain error, that is, error "clearly capable of producing an unjust result." <u>R.</u> 2:10-2; <u>see also</u> <u>R.</u> 1:7-2; <u>State v. Montalvo</u>, 229 <u>N.J.</u> 300, 320-21 (2017) (noting that jury instructions are reviewed for plain error if defendant did not

object to the instructions at trial). "Regarding a jury instruction, 'plain error requires demonstration of legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" Montalvo, supra, 229 N.J. at 321 (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

In his first point, defendant argues that the facts do not necessarily suggest a drug transaction, and that he and Martinez could have shared joint possession of the marijuana. He asserts the "fact that Martinez gave [defendant] money does not make it a drug sale. Martinez could have been giving [defendant] gas money for picking up their [jointly possessed] marijuana." The court therefore should have charged the jury on possession as a lesser-included offense of possession with intent to distribute or distribution of marijuana. In his fourth point, defendant challenges this excerpt from the distribution charge: to "distribute means the transfer, actual, constructive or attempted from one person to another of a [CDS]." Defendant alleges the jury had no guidance on what constituted an attempt based on the language of that charge.

Concerning defendant's sale of marijuana to Martinez, we find no error in the court not charging possession as a lesser-included offense of possession with intent to distribute or distribution of marijuana. A trial court "shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8(e). There must "be a rational basis in the evidence to support a charge on that included offense." State v. Cassady, 198 N.J. 165, 178 (2009) (quoting State v. Thomas, 187 N.J. 119, 131 (2006)). Here defendant's fantastical speculation about the reasons Martinez gave defendant money does not constitute "a rational basis in the evidence" to support a charge on a possessory offense. Defendant distributed the marijuana to Martinez. No facts rationally suggest any other explanation for the exchange of money for drugs.

Defendant's contention concerning the charge on distribution is also devoid of merit. The trial court substantially followed the model jury charge. Moreover, considering police observed defendant sell marijuana, recovered the marijuana from the buyer, and recovered additional marijuana from defendant's single-room residence, we are unconvinced "that of itself the error possessed a clear capacity to bring about an unjust result." Montalvo, supra, 229 N.J. at 321.

For similar reasons, we reject defendant's argument in Point II that his Sixth Amendment right to confront witnesses was violated. Defendant contends the State implied he was a drug dealer through the officers' testimony they were conducting surveillance, Officer Giannetta's testimony that his attention was drawn to defendant, and the absence of any explanation for these events. Defendant further alleges the error was exacerbated when Gianetta testified that after entering the residence and confronting Martinez, Giannetta said, "I was instructed by Mr. Martinez to the bathroom area and a small carpet area that wraps around the toilet and located three yellow-tinted bags of marijuana that were — he placed under there."

Nothing in Officer Gianetta's testimony suggested he had received incriminating testimony from a non-testifying witness about defendant, or that the officer "possesse[d] superior knowledge, outside the record, that incriminates the defendant." State v. Branch, 182 N.J. 338, 348, 351 (2005). Although Officer Gianetta testified he was conducting surveillance and, when asked if "anything dr[e]w your attention while you were conducting that surveillance," responded with defendant's name, nothing in that exchange implied that someone had given police information about defendant. Nothing in that exchange suggested, for example, that defendant had prior convictions, the area under surveillance was

14

known for drug activity, or that police had been provided with information about defendant's criminal activity. For these reasons, and in view of the overwhelming evidence of defendant's guilt, we find no plain error in Officer Gianetta's testimony that defendant drew his attention when he was conducting surveillance.

Nor do we find reversible error in the admission of Martinez's "instruction" to Officer Gianetta to go to the bathroom where the officer found "three yellow-tinted bags of marijuana that . . . [Martinez] placed . . . there." We note the prosecutor carefully phrased the question: "what, if anything, did you do after Detective Mikros had that conversation with Martinez?"[4] The prosecutor's reference to a conversation, without its content, was elicited to explain Officer Gianetta's conduct. The officer's answer, which included what he was told in addition to what he did, was partially non-responsive.

Nonetheless, even without the hearsay statement, the officer would have testified he found three baggies of marijuana, in a residence Martinez entered, shortly after officers observed Martinez give defendant money in a hand-to-hand street transaction. The obvious inference was the officers seized the marijuana defendant sold to Martinez. The permissible testimony

---

[4] The prosecutor had elicited testimony that the detective and Martinez had conversed.

all but nullified any prejudicial impact the officer's non-responsive repetition of Martinez's hearsay statement might otherwise have caused, a consideration that could explain why defendant did not object. In any event, considering the hearsay statement in the context of the entirety of the State's proofs, we conclude the hearsay statement did not constitute an error that was clearly capable of causing an unjust result.

Defendant also argues the State's introduction of the map depicting the area within 500 feet of a public park violated his Sixth Amendment right to confront witnesses because no one involved in the map's preparation testified at trial. Following the submission of briefs in this case, the Supreme Court decided State v. Wilson, 227 N.J. 534 (2017), in which it held such maps were "nontestimonial and that [their] admission therefore did not violate defendant's confrontation rights." Id. at 538. The Court determined such maps were "admissible, if properly authenticated, under N.J.S.A. 2C:35-7.1(e) and as public records pursuant to N.J.R.E. 803(c)(8)." Ibid. In the case before us, authentication of the map was not an issue at trial and is not an issue on appeal.

We have considered defendant's arguments in Points III, V through VII, and IX in light of the record and applicable legal principles and find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

16

In Point VIII, defendant challenges on several grounds the "affidavit supporting the [search] warrant" of his residence. Defendant asserts the affidavit "did not adequately articulate the factual basis for the informant's knowledge, nor did it 'demonstrate' that the informant had been reliable in the past, as required by law." Defendant also asserts "the facts themselves were wholly inadequate to establish probable cause. No officer ever observed drugs on the defendant, in his car, in his house, or anywhere near him." Lastly, defendant contends "the supporting affidavit contained intentional and/or reckless material misrepresentations and omissions." Not one of these arguments has any merit.

Following defendant's arrest, the police obtained the warrant to search his room. Detective Mikros testified before a Superior Court judge; he did not submit an affidavit. The detective testified he received information from a CI that defendant was selling marijuana out of his residence. In the past, the CI had given information that resulted in the issuance of approximately fifteen search warrants and "over [seventy] to [eighty] arrests." The warrants resulted in the seizure of controlled dangerous substances, weapons, and cars.

According to Detective Mikros, the CI told him defendant sold marijuana from his home, which the CI identified by its street

address and floor. The CI said defendant only "brings out whatever the person orders. So if you order two bags, one bag, three bags, he's only gonna deliver whatever the delivery order is." Detective Mikros testified the CI's information was based on his personal knowledge from ordering from defendant, as recently as "a couple weeks ago."

Detective Mikros recounted the events culminating in defendant's arrest, including the surveillance, the observation of defendant and Martinez's hand-to-hand street transaction, and the seizure of marijuana from the residence Martinez entered after the street transaction. Martinez not only identified defendant as the person who sold him the marijuana, but also gave police defendant's cellular phone number. Defendant's phone, which police had confiscated, rang when the detective dialed the number.

Detective Mikros also related how he had driven to defendant's room after arresting him. While in the hallway of the rooming house, defendant's cousin arrived and verified which room was defendant's and that defendant lived there alone. The detective could smell raw marijuana emanating from a room.

"The standards for determining probable cause to arrest and probable cause to search are identical." State v. Moore, 181 N.J. 40, 45 (2004) (citing State v. Smith, 155 N.J. 83, 92 (1998)). "Probable cause exists if the facts and circumstances known to the

18                                                                      A-3069-14T3

officer warrant a prudent man in believing that the offense has been committed."  State v. Novembrino, 105 N.J. 95, 106 (1987) (quoting Henry v. United States, 361 U.S. 98, 100-02, 80 S. Ct. 168, 170-71, 4 L. Ed. 2d 134, 137-38 (1959)).  "Before issuing any warrant, a judge must be satisfied that there is probable cause to believe that a crime has been or is being committed at a specific location or that evidence of a crime is at the place to be searched."  State v. Evers, 175 N.J. 355, 381 (2003) (citing State v. Sullivan, 169 N.J. 204, 210-11 (2001)).

Here, the facts the State established through Detective Mikros's testimony — most of which defendant has failed to mention in his brief — establish probable cause, as the issuing judge found.  The detective's testimony concerning the CI's past history established the CI's veracity. See Sullivan, supra, 169 N.J. at 213.  Moreover, our courts have recognized "the smell of marijuana itself constitutes probable cause 'that a criminal offense ha[s] been committed and that additional contraband might be present.'" State v. Walker, 213 N.J. 281, 290 (2013) (alteration in original) (quoting State v. Nishina, 175 N.J. 502, 516-17 (2003)).

Defendant's contention the detective's testimony contained material misrepresentations is equally lacking in merit. Defendant's cousin, Juan Andino, testified at the suppression hearing to essentially the same facts he testified to at trial,

as did the law enforcement officers. Defendant argued that Andino's testimony that police searched defendant's rooms hours before they arrested him demonstrated the warrant was issued based on material misrepresentations. The trial court found the officers credible and Andino incredible. The trial court's credibility determinations are amply supported by the record. We thus defer to them. State v. Diaz-Bridges, 208 N.J. 544, 565 (2012).

Lastly, defendant argues in Point X that his sentence is excessive. His primary emphasis is on the trial court's imposition of custodial terms without parole eligibility. Defendant is mistaken, as evidenced by both the sentencing transcript and the judgment of conviction. The court imposed "flat" prison terms with no period of parole ineligibility. Defendant's remaining arguments concerning his sentence are similarly lacking in merit and do not warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION