# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0153-20

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

SCHUYLER M. DRAKE,

      Defendant-Appellant.

_____

Submitted December 15, 2021 – Decided December 30, 2021

Before Judges Hoffman, Whipple and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FO-02-0350-20.

Carl M. Losito, attorney for appellant.

Mark Musella, Bergen County Prosecutor, attorney for respondent (Ian C. Kennedy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Schuyler M. Drake appeals from his conviction of criminal contempt, a disorderly persons offense, N.J.S.A. 2C:29-9(b)(2), for purposely or knowingly violating a final restraining order (FRO) entered against him under the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35, following a bench trial. He also appeals from a Law Division order denying his motion for a judgment of acquittal pursuant to Rule 3:18-2 or a new trial pursuant to Rule 3:20-1.

We glean the following facts from the record. S.G.[1] and defendant began dating in 2016. They saw each other "pretty often" from then until January 2018 when S.G. tried to end the relationship. In April 2018, S.G. applied for and obtained a temporary restraining order against defendant. On June 21, 2018, she obtained a final restraining order (FRO) against defendant. The FRO prohibited defendant from going to S.G.'s residence and her place of employment. S.G. testified that defendant knew where she worked, generally what hours she worked, and where she lived because during their relationship, defendant would stay overnight at her home and on a few occasions drove to her place of employment when she was having car issues. Additionally, defendant was

---

[1] We use initials to refer to victims of domestic violence to protect their privacy. R. 1:38-3(d)(10).

"prohibited from having **any** oral, written, personal, electronic, or other form of contact or communication with" S.G.

At around 7:15 a.m. on December 5, 2019, S.G. went to work at a charter school in Garfield. When she got into her car, nothing appeared to be wrong with it and she proceeded to drive to school and parked in the school's parking lot. She was required to move her car to the street at approximately 8:30 a.m., and again the car was fine. When she returned to her car at about 4:00 p.m., she noticed a long scratch that went down the passenger side of the vehicle. S.G. contacted the police to make a report. The damages to her vehicle totaled $834.02.

The following day, S.G. was contacted by Detective Dennis Serritella of the Garfield Police Department, who was assigned to her case. S.G. provided him with the pictures she took of the damage to her vehicle. The detective had S.G. come to the police headquarters a few days later to observe the video he accessed from a police security camera that captured the person causing the damage to her vehicle. The video was played in court and S.G. identified the individual as defendant, her ex-boyfriend. She explained she knew it was him because of: "His slender physique. His height. The mannerism and the way he's walking in the video, and the way he has his hand in his pocket. The way

3

he like brushes his hair – like, around his ears and that he's wearing a hat. His boots, wearing work boots." She testified that she was 100 percent positive it was him in the video damaging her car.

At around 9:50 p.m. on December 7, 2019, S.G. received an unusual phone call from an unknown number. Because of recent events she decided to check her call blocking protection application, which allows her to input contacts and other numbers she wished to block from calling her cellphone. When she opened the application, it showed that at approximately 9:50 p.m., four consecutive phone calls had come in from defendant's phone number, after the unknown number had called her. S.G. took a screenshot of the phone log in the application and contacted the police, claiming her ex-boyfriend was harassing her.

A complaint-warrant was issued for defendant, charging him with criminal contempt for violating the FRO, N.J.S.A. 2C:29-9(b)(1), and harassment, N.J.S.A. 2C:33-4(a). Three days later, a second complaint-summons was issued against defendant, charging him with criminal contempt for violating the FRO by going near S.G.'s workplace, and criminal mischief for causing more than $500 worth of damage to her vehicle, N.J.S.A. 2C:17-3(a)(2). The Bergen County Prosecutor's Office (BCPO) later downgraded the charges

4

to disorderly persons contempt, N.J.S.A. 2C:29-9(b)(2), and petty disorderly persons disorderly conduct, N.J.S.A. 2C:33-2(a)(1).

A two-day Family Part bench trial took place in August 2020. The physical evidence presented to support S.G.'s claim that she received contact from defendant in violation of the FRO were a number of screenshots from her cell phone of a phone log from a call protection application which S.G. testified she downloaded to block phone calls or messages from particular phone numbers, spam, and robocalls. These screenshots show defendant's name, contact information, and log entries that showed his cell phone number contacted her phone four separate times in a row on the evening of December 7, 2019. The screenshot listed defendant's phone number, which defendant himself confirmed was his phone number on direct examination, as did his father during his testimony. Defense counsel objected once in search of clarification as to whether the screenshot was from her phone or from her phone company. After S.G. confirmed it was from her phone, defense counsel stated he had no objection to admitting the screenshots into evidence. The screenshots of the phone log were admitted into evidence without further objection.

Following summations, the judge issued an oral decision. She first ruled that because the video of the individual damaging S.G.'s car was too unclear to

A-0153-20

identify the perpetrator, she was not "firmly convinced" and found defendant not guilty of the criminal contempt and disorderly conduct charges related to that incident.

Regarding the second incident, the judge found that the State proved beyond a reasonable doubt that defendant committed criminal contempt by violating the FRO. But because it was not clear what defendant's intent was when making those phone calls, she found him not guilty of harassment.

The judge noted there was no dispute that an FRO was in place against defendant, that defendant knew the FRO was in effect and the prohibitions imposed by the FRO, and that he was served with a copy of the FRO.

Regarding credibility, the judge stated that she considered the witness's interest in the outcome of the case, the accuracy of the witness's recollection, the witness's ability to have first-hand knowledge, the reasonableness of the testimony, the witness's demeanor on the stand, the witness's candor or evasiveness, the witness's willingness or reluctance to answer questions, the believability of the testimony, and any inconsistent or contradictory statements.

The judge found Detective Serritella to be credible but gave little weight to his identification of the perpetrator of the damage to S.G.'s car due to the quality of the video and the fact he had never met defendant before.

A-0153-20

The judge found S.G. to be "highly credible," noting her testimony was very accurate, she was able to give appropriate estimates, her testimony was consistent with the State's exhibits, and that she testified from her firsthand knowledge. The judge found her testimony to be "reasonable" and "inherently believable" and her demeanor to be "forthright." She made eye contact and was not evasive. The judge further found there was "no reason to believe" that S.G.'s testimony "was fabricated in any way."

In contrast, the judge found the testimony of defendant's witness, Gregory Stevens, was not reasonable or believable and his demeanor was evasive. He had difficulty recalling information and could not answer the State's questions.

The judge found defendant's testimony that he never made the blocked calls to be self-serving, noting "[h]e also testified he was using his phone at about that time." Defendant testified that he no longer had S.G. in his contact list. The judge noted that even if that were true, "all he would have to do is dial it once and then hit redial . . . ."

As to defendant's testimony that he did not know where S.G. worked, the court noted that defendant admitted to "picking up her vehicle from the area of her employment on at least one prior occasion and [S.G.] explained, very credibly, that, in fact, he did pick up her vehicle and repaired it." In turn,

A-0153-20

defendant acknowledged picking up S.G.'s vehicle at least once, taking it back to her house, and fixing it there.

The judge rejected defendant's contention that the blocked calls would have been shown on Exhibit D-3 if he had made them. The judge concluded "[t]here was no proof of that." She also rejected defendant's argument that the blocked calls were only an attempt at contacting S.G., noting that the FRO prohibits any form of contact, and here, the calls reached S.G.'s intercept log. The judge determined that the blocked call was "an electronic communication to the victim's phone," which is prohibited under the FRO and found defendant guilty of contempt relating to the second incident.

As to sentencing, the judge noted that defendant had a prior conviction for contempt of a domestic violence restraining order, thereby requiring that defendant serve a mandatory minimum term of imprisonment of not less than thirty days pursuant to N.J.S.A. 2C:25-30. The judge found aggravating factors three, six, and nine, N.J.S.A. 2C:44-1(a)(3), (6), (9), mitigating factor two, N.J.S.A. 2C:44-1(b)(2), and that the aggravating factors outweighed the mitigating factor. Defendant was sentenced to a 180-day jail term, a twenty-four-month term of probation, ordered to pay an appropriate monetary penalty, assessment, and domestic violence surcharge, and awarded 140 days of jail

8

credit. Defendant was also ordered to undergo a mental health evaluation and treatment as recommended, attend a batterer's intervention program, and was prohibited from purchasing, owning, possessing, or controlling a firearm. Defendant became disruptive in court when he was denied a delay in reporting to jail to serve his sentence.

Following sentencing, defendant moved for a judgment of acquittal and a motion for a new trial. On August 27, 2020, the trial judge issued an oral decision and an order denying the motions. The judge rejected defendant's argument that there was insufficient proof of the identification of the caller on December 7. The judge noted that she considered all relevant evidence in its entirety, whether direct or circumstantial, and that her "verdict was not based merely upon a screenshot of the defendant's telephone number," but rather on "the totality of the evidence presented by both the State and the defense."

The judge reiterated that she found the victim highly credible. The judge recounted the evidence of the four blocked unwanted phone calls from defendant's cell phone at approximately 9:50 p.m. on December 7. She noted that defendant, who testified at trial, did not deny that the blocked calls were from his phone number. Defendant admitted that he was using his phone when the blocked calls were made. The judge found the fact that the blocked calls did

9

not appear on defendant's phone bill did not refute that defendant admitted using his phone at the time the blocked calls were made. Likewise, the fact that the victim did not hear defendant's voice also did not refute the evidence presented. The fact that the evidence was circumstantial made it "no less compelling" to the judge, who rejected defendant's "self-serving" denial, finding it was "not credible." The judge "did not find the defendant's testimony believable, especially in light of all of the other circumstances." The judge determined that the verdict "was not against the weight of the evidence."

The judge also rejected defendant's contention that a blocked call was not a prohibited contact or communication, concluding that the "communication was made the minute the victim saw the defendant's phone number on her call protection log and/or really, the minute that the defendant made that phone call . . . ." The judge found the fact that there were four calls made bolstered the proof that "this was no accident," and that "defendant knowingly and purposefully . . . made the calls to the victim." The judge concluded that "[s]imply because the call protect application blocked the call does not negate the defendant's intent or conduct."

The judge also rejected defendant's argument that the screenshot of the call protection application showing the blocked calls was inadmissible hearsay

A-0153-20

without authentication by the custodian of records of the phone carrier and expert testimony regarding the application. The judge noted that she found the screenshot was properly authenticated before admitting it into evidence. The judge stated: "The victim went into great detail explaining why she had the application, how she used it, and how she set it up. She testified that it accurately depicted what she had personally observed on her telephone." The judge found that expert testimony was not required. For these reasons, the judge found a new trial was not warranted. This appeal followed.

Defendant raises the following points for our consideration:

> I. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO EXCLUDE THE STATE'S EXHIBITS P-6 AND P-7 WHICH WERE SCREENSHOTS FROM THE VICTIM'S CELLPHONE AND FAILING TO EXCLUDE THE VICTIM'S TESTIMONY REGARDING SAME, WITHOUT FIRST REQUIRING THE FOUNDATIONAL TESTIMONY OF AN EXPERT WITNESS AUTHENTICATING AND EXPLAINING THE AT&T APPLICATION THAT THE VICTIM USED TO PRODUCE SUCH SCREENSHOTS DEPICTING DEFENDANT'S CELLPHONE NUMBER AS ALLEGED BLOCKED CALLS, WHICH DEPRIVED DEFENDANT OF A FAIR TRIAL.
>
> II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO EXCLUDE SAID SCREENSHOTS WHICH WERE INADMISSIBLE AND VIOLATIVE OF DEFENDANT'S CONFRONTATION RIGHTS

UNDER THE UNITED STATES AND NEW JERSEY CONSTITUTIONS WITHOUT FIRST REQUIRING THE FOUNDATIONAL TESTIMONY OF AN EXPERT WITNESS TO AUTHENTICATE AND EXPLAIN HOW THE APPLICATION WORKS, WHICH DEPRIVED DEFENDANT OF A FAIR TRIAL.

III. THE CONTEMPT CONVICTION SHOULD BE REVERSED SINCE SAID SCREENSHOTS DID NOT CONSTITUTE "CONTACTS OR COMMUNICATION" BY THE DEFENDANT IN VIOLATION OF THE FINAL RESTRAINING ORDER (FRO) SINCE THERE WAS NO PROOF THAT THE DEFENDANT CALLED AND CONNECTED WITH THE VICTIM, WHICH FINDING DEPRIVED THE DEFENDANT OF A FAIR TRIAL.

IV. THE CONTEMPT CONVICTION SHOULD BE REVERSED SINCE THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AS THE STATE DID NOT PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT KNOWINGLY VIOLATED THE FRO SINCE THE VICTIM COULD NOT IDENTIFY THE DEFENDANT AS THE CALLER, BUT JUST THE DEFENDANT'S PHONE NUMBER ON HER PHONE'S SCREEN AFTER USING AN UNAUTHENICATED AT&T APPLICATION.

We find no merit in any of these arguments and affirm defendant's conviction and the denial of his motions for a judgment of acquittal or a new trial substantially for the reasons expressed by the trial judge in her oral decisions. We add the following comments.

12

Our review of a judgment entered following a bench trial is very limited. We apply a deferential standard of review. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). When the trial judge acts as the fact finder in a bench trial, we "must accept the factual findings of" that trial judge, when such findings "are 'supported by sufficient credible evidence in the record.'" State v. Mohammed, 226 N.J. 71, 88 (2016) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). An appellate court "should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

This deferential standard is applied "because an appellate court's review of a cold record is no substitute for the trial court's opportunity to hear and see the witnesses who testified on the stand." Balducci v. Cige, 240 N.J. 574, 595 (2020). Particular deference is accorded to factfinding by Family Part judges because of the family court's special jurisdiction and expertise in family and domestic violence matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998).

13

However, to the extent that a trial court's decision implicates legal principles, we review those legal assessments de novo. D'Agostino, 216 N.J. at 182.

When we are satisfied that the findings of the trial court could reasonably have been reached on sufficient credible evidence present in the record, our task is complete and we should not disturb the result, even if we might have reached a different conclusion were we the trial tribunal. State v. Johnson, 42 N.J. 146, 162 (1964).

A person is guilty of violating N.J.S.A. 2C:29-9(b) "if that person purposely or knowingly violates any provision in an order entered under the provisions of [the Act] . . . ." In this matter there is no dispute that an FRO had been entered against defendant, that defendant knew the FRO was entered, and that he had been served with a copy of the FRO. The FRO unequivocally prohibited defendant from having any form of contact or communication with S.G. The focus of defendant's argument is twofold: (1) there was insufficient admissible evidence that he made the four blocked calls to S.G.; and (2) a blocked call did not constitute prohibited contact or communication. We are not persuaded.

In deciding guilt or innocence, the trier of fact may consider both direct and circumstantial evidence. State v. Phelps, 96 N.J. 500, 511 (1984).

A-0153-20

"[I]ndeed, in many situations, circumstantial evidence may be 'more forceful and more persuasive than direct evidence.'" State v. Mayberry, 52 N.J. 413, 437 (1968) (quoting State v. Corby, 28 N.J. 106, 119 (1958)).

To admit a physical object into evidence, "the proponent must present evidence sufficient to support a finding that the item is what its proponent claims." N.J.R.E. 901. "The rule 'does not require absolute certainty or conclusive proof'—only 'a prima facie showing of authenticity' is required." State v. Tormasi, 443 N.J. Super. 146, 155 (App. Div. 2015) (quoting State v. Mays, 321 N.J. Super. 619, 628 (App. Div. 1999)). A prima facie showing may be made by direct evidence, i.e., testimony from the author, or by circumstantial evidence. Konop v. Rosen, 425 N.J. Super. 391, 411 (App. Div. 2012). As we have recognized, N.J.R.E. 901 "'does not erect a particularly high hurdle,'" and when acting as both judge and factfinder, "the better practice . . . will often warrant admission and then consideration" of the weight it should be given in relation to the other evidence. Tormasi, 443 N.J. Super. at 156-57 (quoting United States v. Ortiz, 966 F.2d 707, 716 (1st Cir. 1992)).

Defendant next argues S.G.'s screenshots were inadmissible hearsay. He also fleetingly refers to the business records exception to the hearsay rule. Defendant contends that the State's failure to produce an expert deprived him of

his right to cross-examine regarding "the validity, use, and abuse of such application, including whether robo calls or third-part[ies] can manipulate such application to cause a particular phone number to appear as the purported caller." We are unpersuaded. Defendant did not raise this objection during the trial. Therefore, we review for plain error. Rule 2:10-2.

The screenshot was not hearsay within the meaning of N.J.R.E. 801. Hearsay is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion," that "the declarant does not make while testifying at the current trial or hearing . . . ." Electronically generated call blocking records are not statements by a person. See State v. Reynolds, 456 S.W.3d 101, 104 (Mo. Ct. App. 2015) (stating that "call logs obtained from [the defendant's] cell phone are not hearsay because they were not statements made by a human declarant"); State v. Gojcaj, 92 A.3d 1056, 1067-68 (Conn. Ct. App. 2014) (noting that data taken from a security system is not hearsay); Bowe v. State, 785 So.2d 531, 532 (Fla. Dist. Ct. App. 2001) (ruling that caller ID displays and pager readouts are not hearsay because they are not statements generated by a person); Inglett v. State, 521 S.E.2d 241, 245 (Ga. Ct. App. 1999) (ruling computer generated data that automatically appears on a cell phone screen is not hearsay because it is not a statement by a person).

Defendant had a full opportunity to cross-examine S.G. regarding her testimony that she downloaded the application to her own cell phone and added defendant's name and contact information into the application in order to manually assign it to block any incoming calls or messages from that number. The judge found that the State satisfied that burden, finding no reason to believe S.G. fabricated the screenshot.

Nor did the admission of the screenshot violate defendant's right of confrontation. The screen shot was not "out of court testimonial hearsay" used "as a substitute for in-court testimony." State v. Williams, 219 N.J. 89, 99 (2014) (quoting State ex rel. J.A., 195 N.J. 324, 342 (2008)). In order to be testimonial, the writing or statement's "primary purpose" must be to "establish or prove past events potentially relevant to later criminal prosecution." State v. Wilson, 227 N.J. 534, 546 (2017). "Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." Id. at 551. Here, the call-blocking application did not record the blocked calls for the primary purpose of proving the calls were made for use during a later criminal prosecution. Furthermore, defendant's right of confrontation was satisfied by being afforded the opportunity to fully cross-examine S.G.

A-0153-20

Additionally, the judge found that since the application intercepted and did not allow for the blocked phone number to connect to S.G.'s phone and prevented the caller from leaving a message, the blocked calls would not show up on defendant's phone bill because they were unconnected calls.

For these reasons, we discern no abuse of discretion, much less plain error, by admitting the screenshots.

Defendant also argues that the trial court erred by finding that the blocked calls were only an attempt at contacting S.G. We disagree. The FRO prohibits any form of contact or communication with S.G. The "contact or communication" clause of an FRO has been interpreted broadly. See State v. E.J.H., 466 N.J. Super. 32, 38-39 (App. Div. 2021) (determining that comments and rude gestures made toward an in-home Nest camera when defendant knew the victim had access to view the camera violated a TRO that prohibited having oral or electronic communication); State v. D.G.M., 439 N.J. Super. 630, 633 (App. Div. 2015) (determining that briefly filming the victim with his cell phone during their child's soccer game "falls within the FRO's prohibition on 'communication'"). The blocked calls were made to her cell phone but were intercepted. As this court noted in E.J.H., "[t]he law must adapt to technological advances." 466 N.J. Super. at 39 (quoting State v. Hubbard, 222 N.J. 249, 276

(2015) (Albin, J., concurring)). The blocked calls were electronic contacts or communications to the victim's phone, which is prohibited under the FRO.

Finally, defendant argues that the State did not prove motive. Unlike harassment, motive is not an element of the contempt charge. See N.J.S.A. 2C:29-9(c) (unlike N.J.S.A. 2C:29-9(b), subsection (c) does not require "the conduct which constitutes the violation" to "also constitute a [separate] crime or a disorderly persons offense").

In sum, we have carefully reviewed the record in light of the arguments raised, and are satisfied that the trial judge sufficiently assessed the testimonial evidence and exhibits in making her factual findings, and that her determination that defendant purposely and knowingly placed the four blocked calls to S.G.'s cell phone, in violation of the FRO, is adequately supported by substantial, credible evidence contained in the record, and could reasonably have been reached upon that evidence. State v. Locurto, 157 N.J. 463, 472 (1999). We discern no basis to disturb defendant's conviction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION